**WRMA BROADCASTING CO., INC., a corporation, and Lee Lunsford, Plaintiffs,**

v.

**J. H. HAWTHORNE et al., Defendants.**

Civ. A. No. 4042-N.

United States District Court, M. D. Alabama, N. D.

Oct. 18, 1973.

D. Coleman Yarbrough (Jones, Murray, Stewart & Yarbrough) and Thomas W. Thagard, Jr. (Smith, Bowman, Thagard, Crook & Culpepper), Montgomery, Ala., for plaintiffs.

Solomon S. Seay, Jr. (Gray, Seay & Langford), Montgomery, Ala., for defendants.

## ORDER

JOHNSON, Chief Judge.

Plaintiffs allege that defendants are conspiring, in violation of 42 U.S.C. § 1985(3),[1] to force the discharge of plaintiff Lunsford, white manager of radio station WRMA, for racial reasons and in violation of his rights under 42 U.S.C. § 1981.[2] Plaintiffs also claim that defendants are acting in violation of the criminal laws of the State of Alabama, specifically Ala.Code tit. 14, §§ 54 and 57 (1958), and plaintiffs seek to have this Court take jurisdiction over this aspect of their claim pursuant to the pendent jurisdiction of this Court. Plaintiffs seek injunctive relief from these alleged wrongs in the form of a preliminary injunction. The parties have stipulated that plaintiffs' motion for a preliminary injunction shall be submitted upon the pleadings, the depositions filed in this cause, and the evidence presented during the hearing on plaintiffs' motion for a temporary restraining order.

### I. *Facts*

Defendants who are black and, for the most part, employees of plaintiff WRMA Broadcasting Co., Inc., an essentially black-oriented radio station, seek, in addition to the resolution of several job-oriented grievances, to force the owners of WRMA to discharge plaintiff station manager Lee Lunsford, who is white. Defendants have publicized their goals in several ways, including picketing of the premises of WRMA. The evidence reflects that defendants have also engaged in a program of secondary pressure against WRMA. Defendants WRMA employees, in concert with defendant Roosevelt Barnett, a non-employee of WRMA, have contacted numerous businesses which advertise on WRMA, seeking to induce a cessation of that advertising. Defendant Barnett is Co-President of the "Alabama Action Committee," which exists for the purpose of "getting jobs for black people." Defendant Barnett and the Alabama Action Committee have in the past been active in boycotting downtown stores, for the most part white-owned and operated, in order to secure employment of blacks in these stores, which goal has in some measure been obtained. Barnett is still, however, in the minds of the white owners of stores with largely black clientele, associated with financially harmful boycotts of stores. Defendant Hawthorne, a WRMA employee and a minister, obtained the assistance of Roosevelt Barnett in going to visit with commercial advertisers on WRMA. Defendant Barnett went on these visits ostensibly because of his friendship with Hawthorne and his interest in the welfare of the black community in general. In each of these local businesses,[3] Hawthorne and Barnett claim that they made essentially the same request: that there was some trouble at WRMA and that they would appreciate it if the store would with-

---

1. That section reads, in pertinent part, (3) If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages . . . . 42 U.S.C. § 1985(3). Although the statute mentions only a damage remedy, the rule in this circuit is that injunctive relief may be posited upon it. Mizell v. North Broward Hospital Dist., 427 F.2d 468, 473 (5th Cir. 1970).

2. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981.

3. The businesses were H. L. Green, Ace Furniture Co., Alabama Drugs, Azar's Men's Store, Beauchamp-Rushton Store, Daylight Grocery, Home Furniture Co., James Store, Miller High Life, and Webber's Department Store.

draw its advertising until the pickets went down. Two of the store managers testified that there had been a more dire message: threats, thinly-veiled or not, that failure to withdraw advertising from WRMA would result in a boycott of that store. Mr. Osborne Glausier, Manager of Ace Furniture Company, testified that he

> was told that had I rather have picket lines put up out in front or discontinue my advertising that day . . . I told them that I would stop it that day.

Allen James, a co-owner of three downtown clothing stores, testified that Barnett said that "he did not want to set up the picket lines in front of anybody's store." Plaintiffs allege that these explicit threats by Hawthorne and Barnett, along with well-understood threats inferred from Barnett's past boycott experience, have caused numerous established Montgomery businesses to cancel their advertising with WRMA, causing irreparable harm to Lunsford and WRMA and interfering with plaintiff Lunsford's right to contract for employment irrespective of his race.

■ In order to prevail upon their motion for preliminary injunction, plaintiffs must show the existence of three elements: (1) a probable right to relief, (2) irreparable harm if injunctive relief is not granted, and (3) the fact that the possible harm to plaintiffs absent an injunction outweighs the harm to defendants if the injunction is granted. American Radio Ass'n v. Mobile Steamship Ass'n, Inc., 483 F.2d 1 (5th Cir. 1973).

## II. Applicability of 42 U.S.C. § 1981

■ In deciding whether plaintiffs have established a probable right to relief, it is necessary to determine whether a white plaintiff may sue under Section 1981 for a deprivation of rights which does not involve any state action. This Court has in the past taken the view that, owing to a peculiar and somewhat murky legislative history, an allegation of state action was necessary in a Section 1981 complaint by a black plaintiff. Cook v. Advertiser Company, Inc., 323 F.Supp. 1212 (M.D.Ala.1971), aff'd on other grounds, 458 F.2d 1119 (5th Cir. 1972). Although there is some authority for the proposition that state action is required in a Section 1981 claim,[4] it has now become clear that this circuit has adopted the theory that state action is not a requisite element of a Section 1981 claim by a black plaintiff. Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011, 1016 (5th Cir. 1971); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097, 1099 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971). Furthermore, it appears that the United States Supreme Court is of the opinion that an allegation of state action is unnecessary in a Section 1981 claim, Tillman v. Wheaton-Haven Recreation Ass'n, Inc., 410 U.S. 431, 439, 93 S.Ct. 1090, 35 L.Ed.2d 403 n. 11 (1973), and the majority of courts in other jurisdictions have similarly held.[5] The law is, therefore, clear that state action is not a requirement of proof in a Section 1981 claim by a black plaintiff. The rationale for not requiring state action in Section 1981 cases is that Section 1981 was passed pursuant

---

4. See, e.g., Smith v. North American Rockwell Corp., 50 F.R.D. 515, 518 (N.D.Okla. 1970); Tennessee ex rel. Davis v. Hartman, 303 F.Supp. 411 (E.D.Tenn.1969).

5. Brady v. Bristol Meyers, Inc., 459 F.2d 621, 623 (8th Cir. 1972); Young v. International Tel. & Tel., 438 F.2d 757, 759 (3rd Cir. 1971); Waters v. Wisconsin Steel Works of Int'l Harvester Co., 427 F.2d 476, 483 (7th Cir.), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); Scott v. Young, 421 F.2d 143, 145 (4th Cir.), cert. de-

nied, 398 U.S. 929, 90 S.Ct. 1820, 26 L.Ed. 2d 91 (1970); Sims v. Order of United Commercial Travellers, 343 F.Supp. 112, 114 (D. Mass.1972); Tramble v. Converters Ink Co., 343 F.Supp. 1350, 1352 (N.D.Ill.1972); Rice v. Chrysler Corp., 327 F.Supp. 80, 86 (E.D. Mich.1971); Grier v. Specialized Skills, Inc., 326 F.Supp. 856, 861 (W.D.N.C.1971); Clark v. American Marine Corp., 304 F.Supp. 603, 610–611 (E.D.La.1969); Dobbins v. Local 212, I.B.E.W., 292 F.Supp. 413, 442 (S.D. Ohio 1968).

to the Thirteenth Amendment [6] and is derived from the 1866 Civil Rights Act.[7] *See, e. g.,* Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 439, 93 S.Ct. 1090, 35 L.Ed.2d 403 n. 11 (U.S. Feb. 27, 1973); Waters v. Wisconsin Steel Works of Int'l Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). The derivation of Section 1981 from the 1866 Civil Rights Act, and not the 1870 Civil Rights Act [8] which was passed pursuant to the Fourteenth Amendment, indicates that Congress in enacting Section 1981 could validly have intended it to apply to purely private acts. Congress had power to reach such private acts through its grant of power under the enabling clause of the Thirteenth Amendment, empowering Congress "to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States." *See* Jones v. Alfred H. Mayer Co., 392 U.S. 409, 439, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968). One of the "badges and incidents of slavery," certainly, was a lack of equality between the races of power to contract. Accordingly, black plaintiffs may sue under Section 1981 without proof of state action.

 While in the past it might have been thought, as a conceptual matter, that the Thirteenth Amendment granted power to Congress to provide for the civil rights of blacks only, and not of whites, this conclusion is not necessary and is not even logical. Congress, pursuant to the Thirteenth Amendment, could and did provide in the reconstruction civil rights statutes that the rights of blacks should be the same as the rights of whites. It is reasonable in every respect to assume that Congress, in acting to secure the rights of all persons against racial discrimina-

tion, could pass general laws providing that *all races* shall be treated equally in certain respects. Under such a general statute, it is entirely proper that a white citizen could benefit incidentally from the elimination of badges and incidents of slavery. Obviously most racially-motivated deprivations of civil rights are and have always been aimed at blacks. However, in those rare instances when a white alleges racial discrimination under Section 1981, it is entirely consonant with the purpose of Section 1981 that whites discriminated against for *racial reasons* should have standing under Section 1981, and the power of Congress so to provide is a power *ancillary* to the enabling clause of the Thirteenth Amendment. *Cf.* Walker v. Pointer, 304 F. Supp. 56, 60 (N.D.Tex.1969). Congress, by its enactment of Section 1981, intended to abolish racial discrimination in contracting. Courts should not unnecessarily limit the operation of the plan which Congress has devised or limit the effectuation of the Congressional purpose. Its primary purpose was to end racial discrimination in contracting in the form which then existed: white discrimination against freedmen. If discrimination against whites by blacks arises in some few circumstances, the obvious intent of the statute should not be ignored. Nothing in Section 1981 limits its

> application to cases where the civil rights of non-whites are being violated. Indeed, it would be unfair to deprive white Americans of the benefit of these sections . . ..

Central Presbyterian Church v. Black Liberation Front, 303 F.Supp. 894, 899 (E.D.Mo.1969). "It is clear that [Section 1981 applies] to racial discrimination against all persons regardless of race." Gannon v. Action, 303 F.Supp.

---

6. *Section 1.* Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

*Section 2.* Congress shall have power to enforce this article by appropriate legislation.

7. Act of April 9, 1866, 14 Stat. 27.

8. Act of May 31, 1970.

1240, 1244 (E.D.Mo.1969), aff'd on other grounds, 450 F.2d 1227 (8th Cir. 1971) (en banc) (affirmed on basis of jurisdiction under 42 U.S.C. § 1985(3)). If there were any doubts before, it has now become clear that Section 1981 is available as a remedy in a case of denial, on account of race, of the right to contract for employment. Brady v. Bristol-Meyers, Inc., 459 F.2d 621 (8th Cir. 1972); Young v. International Tel. & Tel., 438 F.2d 767 (3rd Cir. 1971); Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011 (5th Cir. 1971). In ordinary circumstances, of course, an employer is the only party who can deny to an employee the right to contract. However, in certain cases other parties not in privity with the employer-employee relationship in question might have attained such power that they seek to interfere, or they do interfere, with the right of an employee to contract with his employer without regard to his race. In such a case, relief under Section 1981 is entirely proper. Pennsylvania v. Local No. 542, Operating Engineers, 347 F.Supp. 268 (E.D. Pa.1972); Dobbins v. Local No. 212, I. B. E. W., 292 F.Supp. 413 (S.D.Ohio 1968). This interpretation is compatible with the wording of Section 1981, which does not say "employers may not deny on account of race the right to make contracts," but instead says, "All persons . . . shall have the same right . . . to make and enforce contracts . . . ." There is no apparent reason to limit Section 1981's application to employers, in a case such as this, where groups outside the privity involved in the employer-employee relationship are seeking to force an employer, through coercion, to deny on account of race his employee's right to contract for employment. Accordingly, there is no reason for this Court to reach plaintiffs' claims under 42 U.S.C. § 1985(3) or under the pendent jurisdiction of this Court. Plaintiffs have established a probability of ultimate relief on the merits in this case.

## III. *Propriety of Injunctive Relief*

██ Injunctive relief, if it is necessary, is a proper remedy under 42 U.S.C. § 1981. Sanders v. Dobbs Houses, Inc., 431 F.2d 1097, 1101 (5th Cir. 1970); Clark v. American Marine Corp., 304 F. Supp. 603, 611 (E.D.La.1969); Dobbins v. Local No. 212, I. B. E. W., 292 F. Supp. 413, 450 (S.D.Ohio 1968). Plaintiffs in this case have adduced proof showing that their harm is both substantial and continuing. WRMA continues to lose revenue. Lunsford owns 12½ per cent of the shares of WRMA. Furthermore, the damage which will accrue to both WRMA and Lunsford absent equitable relief will be irreparable. Defendants have already been actively engaged in the pursuit of their boycott aimed at securing the discharge of Lunsford; further continuance of this activity could have a deep and lasting effect upon the willingness of advertisers to purchase advertising with WRMA. Furthermore, the balancing of the harm to plaintiffs and to defendants indicates that defendants will in no way be substantially damaged by the imposition of limited injunctive relief. This Court is not at the present time intervening in any valid dispute between WRMA and its employees concerning the terms and conditions of employment. The harm which defendants might incur in this case is harm arising from a cessation of violation of the law. That variety of harm should not be cognizable in any "balancing" test for purposes of equitable relief. All persons are bound to obey the law, even at the price of personal hardship. This is especially true when, as here, there is in fact no substantial hardship involved in obedience to the law. It will also be noted that in this case no legal remedy is adequate to protect the interests of plaintiffs. *Cf.* Littleton v. Berbling, 468 F.2d 389, 412 (7th Cir. 1972); Developments in the

Law—Injunctions, 78 Harv.L.Rev. 994, 1002 (1965).

A consideration of all these factors necessitates the conclusion that limited injunctive relief is proper in this case. Accordingly, it is the

Order, Judgment and Decree of this Court that defendants J. H. Hawthorne, Francis Ramsey, Terry German, Charles Twitty, Ron Allen, Bob Shivers, William Boswell, Jeanette Penney, Cornelius Hall, Jr., and Roosevelt Barnett, their agents, servants, and employees, and those persons in active concert or participation with them who receive actual notice of this injunction, be and each is hereby enjoined and restrained from:

(1) Picketing the premises of WRMA radio station on Lower Wetumpka Road, Montgomery, Alabama, when more than eight pickets are present;

(2) Engaging in any acts of violence or destruction against the property of WRMA;

(3) If the purpose is to cause a cessation of business with WRMA, threatening, insinuating, or suggesting to any owner, agent or employee of any business firm, or the distributor of any product which has advertised on WRMA since January 1, 1973, that such firm, or the distributor of such product, or such product itself will be the object of any boycott by any group or individual;

(4) Picketing, handbilling, or boycotting any person or firm which has advertised on WRMA since January 1, 1973, if the purpose is to cause a temporary or permanent cessation of business between that person or firm and WRMA;

(5) Threatening or intimidating in any way any customer of any business which advertises with or which has advertised on WRMA since January 1, 1973;

(6) Threatening or intimidating any officers, agents, or employees of WRMA.