David DeMATTEIS, Plaintiff-Appellant,

v.

EASTMAN KODAK COMPANY,
Defendant-Appellee.

No. 320, Docket 74–1708.

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1974.

Decided Feb. 6, 1975.

Joan de R. O'Byrne, Rochester (Michael Nelson, Rochester, on the brief), for appellant.

James H. Morgenstern, Rochester (Nixon, Hargrave, Devans & Doyle, Rochester, on the brief), for appellee.

Before KAUFMAN, Chief Judge, and ANDERSON and FEINBERG, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

David DeMatteis, the appellant, filed a charge on or about February 26, 1972 with the Equal Employment Opportunity Commission (the Commission), in which he alleged that the Eastman Kodak Co. (Kodak), for which he, a white man, had worked more than thirty years, *forced* him into premature retirement solely because he had sold his house, located in a neighborhood inhabited primarily by white Kodak employees, to a black fellow-employee.[1] Kodak, it is claimed, thereby violated § 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2.[2]

The Commission informed DeMatteis in a letter dated May 8, 1973 that it had determined, after conducting an investigation, that there was not reasonable

---

1. Appellant, who was 63 years of age when he filed the charge with the Commission, alleges in essence that Kodak denied him medical treatment and facilities to which he was entitled, and that it also denied him the necessary equipment and supplies for the performance of his work, thereby resulting in unfair evaluations, that it refused to take disciplinary action against co-workers and supervisors who harassed him, that it compelled him to return to work "contrary to his physical and mental well-being." He contends that, as a result of such actions, his "physical and mental well-being deteriorated, certain pre-existing illnesses were exacerbated and

finally, [he] contracted additional debilitating physical conditions, thus causing his early retirement and constructive discharge."

2. Section 703(a) provides:

"It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . ." 42 U.S.C. § 2000e–2(a).

cause to believe that DeMatteis' charge against Kodak, alleging a violation of the Act, was true, that it had therefore "dismissed" his charge, and that he had the right ". . . as set out under Section 706 [of the Act]" to commence a civil suit on the Title VII claim in the United States District Court.[3]

Section 706 provides:

"If a charge filed with the Commission . . . is dismissed by the Commission . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ." 42 U.S.C. § 2000e–5(f)(1).

After he received the Commission's determination and notice of dismissal of his charge against Kodak and of his statutory right to file a civil action in the United States District Court, DeMatteis retained counsel. Although the 90-day limitation from May 8, 1973, the date of the determination and dismissal, had not run out, counsel did not then bring such an action, but decided that DeMatteis was required first to procure from the Commission a so-called "Notice of Right to Sue" as mentioned in 29 C.F.R. § 1601.25b and § 1601.25c which, among other things, provide:

"At any time after the expiration of one hundred and eighty (180) days from the date of the filing of a charge or upon dismissal of a charge at any stage of the proceedings, an aggrieved person may demand in writing that a notice issue pursuant to § 1601.25, and the Commission shall promptly issue a notice, and provide copies of the charge to all parties." § 1601.25b(c).

DeMatteis never applied for such a notice before he received the findings and determination of the Commission on May 8, 1973. Moreover, counsel may have failed to note that, in the over-all scheme of the regulations, § 1601.25 was designed to take effect "after failure of conciliation." There was no consideration given to conciliation in the present case, as that stage in the procedures was never reached.

At any rate in the middle of July, 1973, counsel asked the Commission for a notice of right to sue and promptly received the Commission's regular form letter which stated that the recipient had 90 days "from the receipt of this Notice" to commence a civil action in the United States District Court.[4] Counsel for DeMatteis assumed from the regulation and the wording of the notice of right to sue that the running of the statute of limitations, i. e. the 90 days within which he could bring the action on his Title VII claim, began on the day when he received the notice of right to sue. Counsel did not bring the suit until October 3, 1973 which was long after the

3. On May 8, DeMatteis received a formal notice, labeled "Determination," and an accompanying letter. The Commission discussed the merits of appellant's charge in the "Determination;" and although the accompanying letter which DeMatteis received, has not been included in the record on this appeal, he conceded during oral argument that it was substantially similar to the following letter which was sent to Kodak at the same time:

"We have investigated the charge of discrimination in employment . . . This Commission has determined that there is no reasonable cause to believe that the matter alleged in the charge constitutes an unlawful employment practice under Title VII of the Civil Rights Act of 1964, as amended. Therefore, *we have dismissed the charge* and the complainant has been notified in accordance with the Commission's Regulations of this determination and of his statutory right to institute a civil action in United States District Court under Section 706 of Title VII . . . ." (Emphasis added.)

4. The Notice of Right to Sue reads as follows: "This charge has been dismissed for the following reason: [an "X" then appears in the box labelled 'No Reasonable Cause'] If you want to pursue your charge further, you have the right to sue the respondent(s) named in this case in the United States District Court for the area where you live. If you decide to sue, you must do so within ninety (90) days *from the receipt of this Notice;* otherwise your right is lost." (Emphasis added.)

90-day period of limitation provided by the statute as commencing with the letter and notice of May 8, 1973 but well within the 90-day period which began July 26, 1973, as mentioned in the right to sue letter.

In his complaint, seeking a declaratory judgment and damages, DeMatteis alleged that Kodak's action, as outlined above, deprived him of rights secured by the Thirteenth and Fourteenth Amendments to the Constitution, and resulted in specific violations of (1) Title VII of the Civil Rights Act, (2) 42 U.S.C. § 1983, and (3) 42 U.S.C. § 1981.

The district court dismissed appellant's complaint in its entirety on the grounds that the Title VII claim was not timely because filed more than 90 days after receipt of the Commission's determination that reasonable cause did not exist; that the complaint did not allege facts constituting "State Action," requisite for a claim under 42 U.S.C. § 1983; and that DeMatteis as a white person lacked standing under 42 U.S.C. § 1981.

*Title VII*

■ The commencement of the action within the applicable 90-day statutory limitation is a jurisdictional fact. See, e. g., Archuleta v. Duffy's Inc., 471 F.2d 33 (10 Cir. 1973); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7 Cir. 1968); Genovese v. Shell Oil Co., 488 F.2d 84 (5 Cir. 1973). The issue presented in this case is whether the limitations period began to run from receipt of the notice on May 8, 1973 of the Commission's determination that there was "not reasonable cause to believe that the charge was true" and the dismissal of the charge, as the trial court held, or from the later receipt of the notice of right to sue on July 26, 1973, as the appellant claims.

■ We find that the issuance of the notice of the right to sue in the present case is irrelevant;[5] since DeMatteis' claim was completely and finally decided by the Commission at the end of the investigative phase. The statute, § 2000e–5(b), explicitly provides,

"If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action."

The Commission filed its extensive and thorough findings and determination on May 7, 1973 and notified both DeMatteis and Kodak of its action on May 8, 1973. Moreover, in that notice it specifically advised DeMatteis of his statutory right to institute a civil action in the appropriate United States District Court under § 706 of Title VII of the Civil Rights Act of 1964, as amended.

The above quoted portion of the statute, § 2000e–5(b), is implemented by 29 C.F.R. § 1601.19b, entitled "Determination as to reasonable cause" which in pertinent part provides,

"(a) If the Commission determines that . . . there is not reasonable cause to believe that a charge is true, the Commission shall dismiss the charge . . . .

(b) The Commission shall promptly notify the aggrieved person . . . and the respondent of its determination under paragraph (a) of this section. The determination is final when issued: therefore, requests for recon-

---

**5.** The holding in Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136 (5 Cir. 1971), on which the appellant relies, is not adverse to our decision in the present case. *Beverly* stands for the proposition that an actual finding by the Commission that there is no reasonable cause to believe that a violation of Title VII has occurred, will not defeat the jurisdiction of the federal court. It also emphasizes the fact that the aggrieved is entitled to "statutory notice" of a determination by the Commission and his right to bring a civil action for the same complaint in the appropriate United States District Court. It should be noted in *Beverly* that the first notice the aggrieved had of the Commission's holding of no reasonable cause to believe that his charge was true was received by him about 42 days after the determination. In the same letter he was notified he had a right to bring a civil action in the United States District Court within 30 days thereafter, which he did. There was no question of when the statute of limitation began to run.

sideration will not be granted." (There follows a provision that the Commission may on its own motion reconsider its determination at any time after prompt notice to the parties; but no such motion was ever considered in this case.)

The foregoing regulations were a sub-division of subpart "B" of the Procedural Regulations entitled "Investigation of a Charge." There is no mention or reference in them to a second notice or any "Notice of a Right to Sue," which of course is not mentioned in *haec verba* anywhere in the statutes.

The sub-division immediately following the investigation phase is "Procedure to Rectify Unlawful Employment Practices" and there follow other sub-divisions, all having to do with the Commission's duties under the statute, once it has found that there *is* reasonable cause to believe that the charge is true, "to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation and persuasion." This is the Commission's *raison d'etre*; and to accomplish its purpose the scope of its duties is broad and its procedures are flexible, but it has no powers of enforcement; and in cases of unlawful employment practices it must itself or through the Attorney General seek the aid of the federal courts. Under these circumstances, efforts at conciliation, adjustment or settlement may become very protracted and often it has been difficult for the aggrieved party or the respondent to know exactly when the proceedings by or before the Commission have terminated.

The statutes and the regulations provide certain time limits after which a party can presume that the administrative proceedings have ended and that he could seek relief in the federal court. In order to make definite and certain that the Commission's proceedings and recourse to administrative remedies had terminated, the Commission invented and put into the regulations § 1601.25

which provided for the "Notice-of-Right-to-Sue." This comes under the sub-division of sub-part "B" of the Procedural Regulations entitled "Procedure After Failure of Conciliation"—a portion of the regulations having nothing whatever to do with the present case, which was terminated at the investigative stage. The purpose of the notice of right to sue was definitely to fix a time when the administrative remedies had ended and when the 90-day statute of limitations for bringing a suit in the federal court began to run. It applies only to dismissals of charges or other terminations of the administrative proceedings which took place after the effort at conciliation and only in cases in which the Commission had found there was reasonable cause to believe that the charges were true.

There was never any need for such a signal in the case before us. The parties on May 8, 1973 received definite and precise notice that the administrative proceedings had been completed and, in the express words of the regulation, that "the determination . . . [*was*] *final* when issued; [and] therefore requests for reconsideration . . . [would] not be granted." § 1601.19b.

The statute, 42 U.S.C. § 2000e–5, provides for but one 90-day limitation for the bringing of actions and that is in sub-section (f)(1). There are described therein four sets of circumstances which, if any one of them occurs, mandate a notification by the Commission (or by the Attorney General, as the case may be) to the person aggrieved; and he (or in certain situations others) may bring a civil action on the charge against the respondent in the appropriate United States District Court "within ninety days after the giving of such notice" by the Commission. The first of these sets of circumstances is the dismissal of a charge filed with the Commission pursuant to sub-section (b) of the statute, which clearly includes and applies to the present case.[6] Sub-section (b) requires

---

**6.** When any of the three sets of circumstances referred to in sub-section (f)(1) of 42

U.S.C. § 2000e–5, other than dismissal under sub-section (b), has occurred after some ef-

the Commission to give notice of the dismissal promptly to the aggrieved person. This duty was fully complied with in this case, and the 90-day statute of limitations within which DeMatteis could bring his action started to run on May 8, 1973. The jurisdiction of the United States District Court to hear and consider De-Matteis' suit depended upon its being brought within that 90-day limitation period.

The effect of a contrary holding would be that in all subsection (b) cases of dismissal by the Commission, after investigation and a determination that there is not reasonable cause to believe that the charge is true (which constitutes a complete and final disposition of the case by the Commission), followed by the required prompt notice to the aggrieved, the 90-day statute of limitations running from the date of the notice could be extended indefinitely until the aggrieved, weeks or months later, asked the Commission to issue to him a second or "Right to Sue" notice, to start another 90-day limitation period running.[7] The Commission has no such regulatory power.

"The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation . . . ." American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951). Arbitrarily to supplant the "notice" prescribed by the statute with that specified in the regulation, would permit an administrative agency to extend the jurisdiction of the district court. This, of course, it should not do. The regulation, to the extent that it has that

effect, should be declared invalid. Espinoza v. Farah Manufacturing Co., 414 U.S. 86, 94–95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973).

Accordingly, the judgment of the district court dismissing the appellant's claim under 42 U.S.C. § 2000e–2 is affirmed.

### 42 U.S.C. § 1983:

■ DeMatteis contends that because Kodak provides social, cultural, athletic, and medical facilities for its employees, and extends to them various benefits, such as banking services and insurance coverage, it thereby exerts considerable influence in the community, but none of the means by which it allegedly does so involves the exercise of powers traditionally reserved exclusively to the state. Appellant does not claim that Kodak exercises any direct control over the activities of the general public. Its reliance on Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), is therefore misplaced. A private party violates 42 U.S.C. § 1983 only to the extent its conduct involves state action. See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); cf. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 176–177, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Because the allegations of the complaint are insufficient to support a finding of state action in this case, we affirm that part of the district court's order dismissing appellant's § 1983 claim.

### 42 U.S.C. § 1981:

■ Appellant also seeks relief under 42 U.S.C. § 1981,[8] which provides: "All

---

forts at conciliation have been made, the Commission has the statutory duty under (f)(1), *on its own initiative*, to inform the aggrieved party of the status of his case in the light of the provisions of that statutory sub-section. At this point, under the regulation, § 1601.25c(d), however, the aggrieved party is left formally to request the Commission for a notice of right to sue—a procedure the operative effect of which is to place in the hands of the aggrieved party the approximate time when he wants the notice to be issued and the 90-day period of the statute of limitations to start running.

7. "Dismissal," under the provisions of the statute, (f)(1), precedes and is not dependent upon the aggrieved party's application for notice thereof. Although sub-section (f)(1) does not specify how soon after "dismissal" the Commission must notify the party, it is clear that the duty to provide the notice which commences the running of the statute of limitations arises automatically and without any action by the claimant.

8. Appellant was allegedly "forced" into premature retirement on or about November 1971. Suit was not filed in the district court

[parties] . . . shall have the same right . . . to make and enforce contracts . . . *as is enjoyed by white citizens* . . . " (Emphasis added.) The district court dismissed the claim on the ground that a white person does not have standing to sue under that section of the Civil Rights Act.

The Supreme Court has held, however, in Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), that a white person who has been " . . . punished for trying to vindicate the rights of [non-white] minorities . . . " has standing to sue under § 1981. *Id.* at 237, 90 S.Ct. at 404.[9] DeMatteis contends that Kodak "forced" him into retirement solely because he had sold his house to a black person.

His retirement was precipitated, according to the complaint, by deteriorating health which Kodak's vindictive conduct served to exacerbate. Appellant also contends that he has suffered economic loss in that his retirement was "premature." Such "punishment" to appellant's legally cognizable interests was allegedly in reprisal for his part in vindicating the right of a black fellow-employee " . . . to make . . . [a] contract[ ] . . . " similar to that which whites in the neighborhood have freely been able to make. DeMatteis therefore has standing to sue under 42 U.S.C. § 1981.

We reverse that part of the district court's order which dismissed the claim and remand for further proceedings not inconsistent with this opinion.

---

until October 1973. Kodak moved the court below to dismiss appellant's § 1981 claim on the ground that it was not timely filed because the applicable period of limitations was one year. Although the district court did not pass on this issue, the statute of limitations question has been raised on the appeal.

Congress has not provided a federal statute of limitations for actions brought under 42 U.S.C. § 1981. In situations where Congress has created federal statutory rights and does not provide a limitations period, federal courts borrow the state statute of limitations applicable to the most similar state cause of action, U.A.W. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)—a principle applicable to federal civil rights actions. Ortiz v. LaVallee, 442 F.2d 912 (2 Cir. 1971).

This court has held that the applicable statute of limitations in a federal civil rights action brought in New York is the three years provided by N.Y.C.P.L.R. § 214(2)—liability based on a statute. Thomas Kaiser v. Cahn, 510 F.2d 282, at 285 (2 Cir. 1974); see Romer v. Leary, 425 F.2d 186 (2 Cir. 1970).

Because suit was filed within three years of the accrual of the cause of action, the claim brought under 42 U.S.C. § 1981 is not barred by the statute of limitations. We do not address appellant's claim that the filing of the Title VII charge with the Commission served to toll the statute of limitations on the § 1981 claim.

**9.** Sullivan, a white person, alleged that he had been expelled from a corporation which operated community recreational facilities solely because he had leased his house and assigned his membership share in the corporation to a black person. He sued for injunctive relief and damages under 42 U.S.C. §§ 1981 and 1982. The Supreme Court held that "Sullivan has standing to maintain this action." 396 U.S. at 237, 90 S.Ct. at 404. Although the Court referred explicitly to § 1982 in setting out the rationale for its position, see, 396 U.S. at 237, 90 S.Ct. 400, it did not limit its holding on the standing issue to that section of the Civil Rights Act.

We need not rest upon the Supreme Court's disposition of the § 1981 claim in Sullivan v. Little Hunting Park, however, in holding, as we do, that a white person who has suffered injury to some legally cognizable interest as a result of " . . . trying to vindicate the rights of [non-white] minorities . . . " has standing to sue for a violation of 42 U.S.C. § 1981. Sections 1981 and 1982 of Title 42 are both derived from § 1 of the Civil Rights Act of 1866. Words which are common to both those sections, therefore, must be construed consistently. Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5 Cir. 1970); Waters v. Wisconsin Steel Works, 427 F.2d 476 (7 Cir. 1970); WRMA Broadcasting Co., Inc. v. Hawthorne, 365 F.Supp. 577, 580 (M.D. Ala.N.D.1973). Section 1982, to which the Supreme Court specifically made reference in discussing the standing issue in *Sullivan,* provides, as does § 1981, that all persons shall have the same statutory rights " . . . as [are] enjoyed by white citizens . . . " The standing of white persons to sue under either section of the Civil Rights Act depends critically upon this clause. Consistency therefore requires that white persons be accorded standing to sue under both § 1981 and § 1982 in circumstances similar to those present in *Sullivan.*