**Flonzo CAMACK, Plaintiff,**

v.

**HARDEE'S FOOD SYSTEMS, INC., Defendant.**

No. C–75–63–G.

United States District Court, M. D. North Carolina, Greensboro Division.

March 8, 1976.

Jonathan R. Harkavy, Smith, Patterson, Follin, Curtis & James, Greensboro, N. C., for plaintiff.

Martin N. Erwin, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for defendant.

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

This matter is before the Court on motions of the defendant, Hardee's Food Systems, Inc. (Hardee's), to dismiss the complaint for lack of subject matter jurisdiction and for summary judgment. Jurisdiction is predicated upon 28 U.S.C. §§ 1337 and 1343(4) and 42 U.S.C. § 2000e–5(f). Plaintiff alleges violations by Hardee's of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, et seq.[1]

Plaintiff Flonzo Camack is a black resident of Guilford County, North Carolina. He alleges that on or about August 17, 1971, he applied for a managerial

---

1. Plaintiff originally claimed a 42 U.S.C. § 1985 cause of action but has voluntarily dismissed with prejudice this aspect of the case.

position with the defendant but was not hired. On October 21, 1971, plaintiff filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Hardee's, alleging that he was not hired because he had received "bad references" from Burger King, a prior employer, in retaliation for filing a Title VII action against the latter. *See* 42 U.S.C. § 2000e–3(a).

Nothing further transpired until August 27, 1973, when plaintiff again filed a charge with EEOC against Hardee's for its refusal to hire him. This second charge alleged racial discrimination in addition to retaliation as motivation for Hardee's action. Hardee's was served with notice of the charge on August 28, 1973. The EEOC administrative investigation of the incident was concluded on May 29, 1974, with an agency determination that, while there was no reasonable cause to credit the retaliation charge, there was reasonable cause to believe the plaintiff was denied employment because of race.

The EEOC then attempted conciliation, but no agreement was forthcoming. On November 1, 1974, plaintiff requested in writing his "right-to-sue" letter from the EEOC. On November 14, 1974, the EEOC District Director, Harris A. Williams, wrote the staff attorney of Hardee's informing him of the Commission's determination that conciliation had failed. Defendant was given five days to request a reopening of conciliation.

On November 20, 1974, Williams addressed the following letter to the plaintiff:

Dear Mr. Camack:

The Commission's efforts to enter into a voluntary Conciliation Agreement in your case against Hardees, Inc. have failed. This letter is to again inform you of your statutory right to pursue your charge of employment discrimination in the appropriate Federal District Court. Should you elect to pur-

sue your case in court, you or your Attorney may request your notice of right-to-sue from this office.

If you have any questions, please feel free to call.

Yours truly,

Harris Williams

On November 27, 1974, presumably responding to plaintiff's November 1, 1974, written request, the EEOC dispatched its formal right-to-sue letter. *See* 29 C.F.R. § 1601.25.

On December 6, 1974, plaintiff appeared at the office of the Clerk of Court in Greensboro, North Carolina, with the EEOC papers and requested the appointment of an attorney. 42 U.S.C. § 2000e–5(f)(1). The Chief District Judge determined that an attorney would not be appointed for the plaintiff, and on December 9, 1974, notification of that decision was mailed to the plaintiff from the Clerk's office. Subsequently, plaintiff retained the services of an attorney and, on February 25, 1975, this action was instituted.

## I. *The 42 U.S.C. § 1981 Claim*

Plaintiff alleges that the refusal of Hardee's to hire him was for racial reasons and therefore denied him the "... same right to make and enforce contracts as is enjoyed by white citizens ...." Complaint, ¶ 11. The defendant has moved for summary judgment as to this cause of action contending that it is barred by the most analogous state statute of limitations. N.C. G.S. 1–52(1) (1969).[2] The defendant points out that the refusal to hire occurred on or about August 17, 1971, and that the complaint in this action was not filed until February 25, 1975—more than three years later.

 It is now settled that the mere filing of a charge with the EEOC under 42 U.S.C. § 2000e–5(e) does not toll the running of the applicable statute of limi-

---

**2.** § 1–52. *Three years.*—Within three years an action—

(1) Upon a contract, obligation or liability arising out of a contract, express or implied,

except those mentioned in the preceding sections.

tations on a 42 U.S.C. § 1981 claim based upon the same set of facts. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). This Court has previously ruled that the North Carolina limitation applicable to a § 1981 claim is N.C.G.S. 1–52(1). *Broadnax v. Burlington Industries, Inc.,* Civil No. C–160–G–71 (M.D.N.C., August 4, 1972). Plaintiff contends that N.C.G.S. 1–52(1) does not apply because an action based on the wrongful refusal to contract is not *the same* as an action on a contract. Plaintiff's Brief, Page 8. The short answer to plaintiff's argument is that the most analogous statute applies. *See Broadnax v. Burlington Industries, Inc., supra,* at 9. It is not necessary that the state statute precisely cover the federal cause of action. A further answer to plaintiff's argument is also contained in *Broadnax v. Burlington Industries, Inc., supra,* at 9–10, where it is pointed out that even if the cause of action under § 1981 is deemed more of a tort-type action or one for the protection of the plaintiff's "rights" than a contract action, the applicable limitation period is nevertheless three years. *See* N.C.G.S. 1–52(5).

Plaintiff further contends that even if N.C.G.S. 1–52(1) controls this case, the state law doctrine of equitable estoppel applies to toll the running of the statute, thereby rendering this action timely. This Court recently interpreted *Johnson v. Railway Express Agency, supra,* as requiring the borrowing of a state's tolling law as well as its limitations. *Lattimore v. Loews Theatres, Inc.,* Civil No. C–75–79–G (M.D.N.C., December 2, 1975). In *Lattimore,* Judge Gordon held that North Carolina's doctrine of equitable estoppel could serve to toll the statute in a federal § 1981 action. However, there is an important difference between the situation in *Lattimore* and the one presented here. In *Lattimore* the plaintiff had done as he was told to do "by responsible officials *of the defendant . . . .*" *Lattimore v. Loews Theatres, Inc., supra,* at 8 (Emphasis added). In this case there is neither allegation nor facts indi-

cating possible misleading conduct *on the part of the defendant.*

█ It is clear that North Carolina's doctrine of equitable estoppel will toll a limitation *only* when it is the defendant himself who has misled the plaintiff in such a manner as to make strict application of the limitation inequitable. *Lewis v. North Carolina State Highway & Pub. Wks. Com'n,* 228 N.C. 618, 46 S.E.2d 705 (1948); *see Matthieu v. Piedmont Natural Gas Company,* 269 N.C. 212, 152 S.E.2d 336 (1967); *Nowell v. Great Atlantic & Pacific Tea Company,* 250 N.C. 575, 108 S.E.2d 889 (1959).

In *Boddie v. Bond,* 154 N.C. 359, 70 S.E. 824 (1911), there is a thorough discussion of equitable estoppel. The Court stated:

Estoppel by misrepresentation or equitable estoppel (which is estoppel in pais) grows out of such conduct *of a party* as absolutely precludes *him,* both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse . . . . (Emphasis added).

70 S.E. at 826.

Plaintiff has not cited, nor has the Court found, any North Carolina case invoking the doctrine of equitable estoppel in a situation in which the representations, negligence, or delay of a third party who was not acting in concert with the defendant led to the plaintiff's failure to file his action. For all that appears in this case, the plaintiff merely filed his Title VII charge, then proceeded to await EEOC's resolution of the matter. *Cf. Johnson v. Railway Express Agency, supra.* Thus, since this action was filed more than three years after the alleged illegal act and no applicable tolling provision having been alleged, defendant's motion for summary judgment will be granted as to the § 1981 claim.

## II. *The 42 U.S.C. § 2000e, et seq., Claim*

Plaintiff also alleges that the failure of Hardee's to hire him was motivated by racial discrimination, thereby violating 42 U.S.C. § 2000e *et seq.* Hardee's has moved for summary judgment as to this claim, contending (a) that the plaintiff did not file his civil action within ninety days from receipt of the failure of conciliation letter, as required by 42 U.S.C. § 2000e–5(f)(1), and (b) that there was no charge filed with the EEOC sufficient to serve as the basis for a civil action alleging racial discrimination.

### (a) *The Ninety-Day Limitation Issue*

42 U.S.C. § 2000e–5(f)(1) reads, in pertinent part, as follows:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . ˙. . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . .
> the respondent named in the charge (A) by the person claiming to be aggrieved . . . .

The statute, therefore, requires the following conditions precedent to the filing of a civil action:

(1) A charge filed with the Commission

(2) A lapse of 180 days thereafter

(3) The lack of a conciliation agreement

(4) Notice to the charging party that the Commission has not entered into a conciliation agreement.

When the above-stated four elements exist, the ninety-day limitation begins to run. This apparently simple statutory procedure has been complicated by the EEOC's promulgation of the so-called "two-letter procedure" pursuant to 29 C.F.R. § 1601.25. When the EEOC is unable to fashion successful conciliation, it first sends a notice to the charging party that its attempts to conciliate have failed. This first notice then adds that, whenever the charging party or his attorney desires, he can request the "formal" right-to-sue letter which will comply with the exact terms of 29 C.F.R. § 1601.25.

The result of the two-letter procedure, if it is indeed a valid procedure at all, is immediately apparent. The plaintiff becomes the sole master of the timeliness of his civil action. So long as he is content with possessing only the first notice, the ninety-day limitation is tolled. Unlike others, this tolling provision is based, not on the inability of the plaintiff to sue or upon some other outstanding equitable consideration, but solely upon the whim of the charging party. The limitation begins to run against him only when *he* decides it will run against him. In the meantime, the potential defendants stands helpless while this Sword of Damocles hangs above him.

This openendedness is in stark contrast to the format of Title VII itself which abounds with 90, 120, 180 and 300-day limitations. *See, e. g.,* 42 U.S.C. § 2000e–5(b) & (e). Quick but equitable resolution of claims is contemplated. As a result, the majority of federal courts confronted by the two-letter procedure have held that the ninety-day limitation runs from the first notice to the charging party of the failure of EEOC to conciliate the dispute—not from the receipt of the "formal" right-to-sue letter.[3]

---

3. *Harris v. Sherwood Medical Industries, Inc.,* 386 F.Supp. 1149 (E.D.Mo.1974); *Barfield v. A.R.C. Security, Inc.,* 9 EPD ¶ 10,136 (N.D.Ga., Aug. 25, 1974); *Mungen v. Choctaw, Inc.,* 10 F.E.P. 1345 (W.D.Tenn., June 18, 1974); *Maguire v. Trans World Airlines, Inc.,* 403 F.Supp. 734 (S.D.N.Y.1975), and cases cited therein; *Clark v. Delta Refining Co.,* 11 F.E.P. 1372 (W.D.Tenn.1975). *Contra, Shepard v. D.A.P., Inc.,* 11 F.E.P. 1373 (S.D.Ohio 1975); *Tuft v. McDonnell Douglas Corp.,* 517 F.2d 1301 (8th Cir. 1975), *cert. denied,* 423 U.S.

This Court finds those cases persuasive and thus rules that the ninety-day limitation begins to run when the charging party is first notified 180 days or more after he filed his charge that no conciliation agreement has been reached. That is all § 2000e–5(f)(1) requires.

It, therefore, follows that the ninety-day limitation began to run against the plaintiff upon receipt of the November 20, 1974, letter. That notice, mailed more than 180 days after the filing of the charge, clearly notified the plaintiff that no conciliation agreement had been reached with Hardee's. Upon receiving the November 20, 1974, letter, plaintiff was faced with two choices. He could institute his own civil action within ninety days or he could rely upon the eventual resolution of the conflict by EEOC administrative action.

In *Taylor v. Pacific Intermountain Express Co.*, 394 F.Supp. 72 (N.D.Ill.1975), the court also held that the first letter informing the charging party of the lack of conciliation triggered the ninety-day limitation. However, that court refused to bar the plaintiff's action because the EEOC informed the plaintiff *in the first letter* that he could sue within ninety days from receipt of the second letter. The court felt equity required that plaintiff be allowed to sue. *See also DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir. 1975), *modifying* 511 F.2d 306 (2d Cir. 1975).

In the present case, however, it is only by implication that one can discern in the November 20, 1974, letter a misleading statement to the effect that the plaintiff *must* have the "right-to-sue" letter before filing a civil action. But even if the letter made misstatements comparable to those present in *Taylor v. Pacific Intermountain Express Co.*, *supra*, this Court concludes that "equity" should not force a defendant innocent of deception to suffer loss of a statutory immunity simply because a third party either deliberately or negligently misled the plaintiff.[4] A prejudiced plaintiff will be free to pursue any other cause of action arising out of the same facts[5] and also perhaps an action against the EEOC officials who either negligently or deliberately misled him. However, it would be grossly inequitable to penalize the potential defendant for the errors of a third party.

An additional reason for not relieving the plaintiff of the statutory limitation exists if it is not considered to be a traditional statute of limitations barring the remedy, but is instead considered a prerequisite to the subject matter jurisdiction of the court. Several courts have concluded that the timely filing of a civil action is a *jursidictional* fact. *Wong v. Bon Marche*, 508 F.2d 1249 (9th Cir. 1975); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 309 (2d Cir. 1975); *modified*, 520 F.2d 409 (2d Cir. 1975);[6]

---

1052, 96 S.Ct. 782, 46 L.Ed.2d 641, 44 U.S. L.W. 3394 (1976); *Williams v. Southern Union Gas Co.*, 529 F.2d 483, 12 F.E.P. 5 (10th Cir. 1976).

In *Maguire, supra*, at 744, the court attempts to distinguish the notice that triggered the thirty-day limitation under the 1964 Act and that which triggers the present ninety-day limitation. The court states *per dictum* that the post-1972 notice must state (a) that the EEOC has determined not to institute its own action, *and* (b) that there has been no conciliation. That court, however, misreads the statute which uses the disjunctive word "or" when referring to four different circumstances, notice of any one of which triggers the ninety-day limitation. *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 310 (2d Cir. 1975), *modified*, 520 F.2d 409 (2d Cir. 1975). The presence of all four sets of circumstances could not be a

requirement as at least one, dismissal of the charge, is inconsistent with the other three. Not even 29 C.F.R. § 1601.25 requires notification of an EEOC determination not to file a civil action.

4. See the discussion of North Carolina's doctrine of equitable estoppel, *supra*.

5. A 42 U.S.C. § 1981 claim might be in order unless, as here, the plaintiff *himself* allowed that claim to become barred.

6. In modifying its prior decision the court held that if the plaintiff had *in fact* been misled by EEOC's interpretation, then the plaintiff, for equitable reasons, would be allowed to file his action. This seems entirely inconsistent with the court's prior holding that timely filing is a *jurisdictional* fact. The court did not address this issue in its second decision.

*Choate v. Caterpillar Tractor Company,* 402 F.2d 357 (7th Cir. 1968); *Genovese v. Shell Oil Company,* 488 F.2d 84 (5th Cir. 1973). Therefore, these courts have construed the circumstances surrounding the presence or absence of a timely complaint as they would any other factor bearing on the subject matter jurisdiction of the court. *Maguire v. Trans World Airlines,* 403 F.Supp. 734, 11 F.E.P. 1362, 1370 (S.D.N.Y.1975). This includes the admonition against expansion of federal jurisdiction by judicial interpretation. *DeMatteis v. Eastman Kodak Co.,* 511 F.2d at 311. *See Archuleta v. Duffy's, Inc.,* 471 F.2d 33, 35 (10th Cir. 1973), wherein it was held that there can be no judicial extension of the limitations contained in 42 U.S.C. § 2000e–5(f)(1).[7] *But see Stebbins v. Nationwide Mutual Insurance Company,* 469 F.2d 268 (4th Cir. 1972) (dictum).[8]

▮▮ Having thus held that the ninety-day limitation began to run upon the receipt by plaintiff of the November 20, 1974, letter, but nevertheless, being without evidence of the *actual* date of receipt, this Court will neither grant summary judgment nor dismiss the action. There remains a genuine issue of material fact going to the availability of the defense. *Rohner v. Union Pacific Railroad Company,* 225 F.2d 272 (10th Cir. 1955). *See also* Annot. 61 A.L.R.2d 341 (1958). Furthermore, the plaintiff should be given a fair opportunity to meet any jurisdictional questions. The Court will judicially notice that a letter mailed from Charlotte, North Carolina, to Greensboro, North Carolina, will not arrive the same day. *See Russell v. American Tobacco Co.,* 528 F.2d 357, 11 F.E.P. 395, 401 (4th Cir. 1975); *petition for cert. filed,* 44 U.S.L.W. 3445 (U.S., Jan. 30, 1976) (No. 75–1081). In addi-

tion, the Court also recognizes that some courts consider the ninety-day limitation tolled for equitable reasons during the time taken to dispose of a plaintiff's *pro se* request for appointment of counsel.[9] *Harris v. Walgreen's Distribution Center,* 456 F.2d 588 (6th Cir. 1972); *Harris v. National Tea Co.,* 454 F.2d 307 (7th Cir. 1971); *Huston v. General Motors Corp.,* 477 F.2d 1003 (8th Cir. 1973). Therefore, until such time as the factual issue concerning the date of receipt is resolved, the granting of defendant's motions to dismiss and for summary judgment would be inappropriate.

(b) *The Sufficiency of the Charge Issue*

The defendant contends that there is no timely filed charge before the EEOC that can serve as a jurisdictional basis for this civil action. Hardee's argues that the 1971 charge is not sufficient support for this racial discrimination. The 1973 charge cannot support this action, Hardee's contends, because it was filed more than 180 days after the challenged action and was thus not timely. 42 U.S.C. § 2000e–5(e). The Court was initially impressed with the defendant's arguments but believes that the recent Fourth Circuit decision in *Equal Employment Opportunity Commission v. General Electric Co.,* No. 75–1007 (4th Cir., Jan. 26, 1976), forecloses this argument. The narrow holding of *General Electric* was that a civil action, whether filed by the EEOC or the individual, could encompass *any* proscribed discrimination whether or not it was complained of in the charge, so long as evidence of that particular species of discrimination was uncovered by a reasonable investigation by the EEOC *of that charge.* Slip Opinion at 15.

7. The court there was dealing with 42 U.S.C. § 2000e–5(e), which was amended and redesignated as 42 U.S.C. § 2000e–5(f) by Pub.L. 92–261 § 4(a) (1972).

8. In the absence of facts showing the date of *receipt* of the November 20, 1974, letter, the Court need not now decide whether the ninety-day limitation is to be considered as an affirm-

ative defense subject to equitable tolling considerations, or a *jurisdictional* fact immune to equitable considerations.

9. It need not now be decided whether the Court would likewise consider the limitation tolled if it should eventually rule the limitation to be a jurisdictional fact.

The Court recognizes that Hardee's could argue *General Electric's* inapplicability to this case as follows: *General Electric* held that the civil action could encompass any discrimination uncovered by the EEOC in the course of a reasonable investigation *of that charge.* Here the defendant was first served by the EEOC on August 28, 1973, and the reasonable cause determination was on May 29, 1974. All this occurred after the filing of the second charge and, therefore, the racial discrimination was unearthed by a reasonable investigation of the August 27, 1973, charge and not the October 21, 1971, charge. Since the 1973 charge was untimely, a civil action could not be based upon either expressly charged discrimination or discrimination discovered within the *General Electric* rule.[10]

The Court believes, however, that the philosophical and legal underpinning, if not the narrow holding, of *General Electric* forecloses this argument. The court in *General Electric* relied heavily on *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970), in reaching its decision. In *Sanchez,* the plaintiff had originally filed a charge alleging only sex as the type of discrimination suffered. After the period for the timely filing of a charge had passed, the plaintiff filed another charge amending the first, and that time she asserted discrimination based on national origin. Despite the defendant's argument that the amendment was actually an untimely new charge, the court held that the changing or addition of the "legal conclusion" as to the motivation of the employer was a mere technical amendment that related back to the original charge under 29 C.F.R. § 1601.11. The substantive part of a charge was held to be the factual situation involved, and so long as that remains the same, the relation-back rules apply.

In this case, as in *Sanchez,* the factual situation alleged in the two charges is the same, *i. e.,* the plaintiff was discriminatorily denied employment after his August 17, 1971, application. The only difference is the statement of the motivation of the defendant—a legal conclusion. *Sanchez v. Standard Brands, Inc. supra,* at 462. The sole distinction between *Sanchez* and the present case is that there the second filing was conspicuously labeled an amendment. The Court does not feel that this is enough to change the result. In the present case, the 1974 filing retained the same EEOC charge number (TCT 2–1508), and in the same box wherein the plaintiff added the racial charge is the notation "(Charge originally filed on 10/2/71)."

■ While this aspect of *Sanchez* was not at issue in *General Electric,* the Court has no reason to believe that the Fourth Circuit would not adopt it in a proper case. Such a holding would certainly be in harmony with that court's liberal interpretation of this remedial act. Thus, this Court holds that the 1974 filing was a mere amendment of the 1971 charge and legally related back to it. 29 C.F.R. § 1601.11. Thus, the 1971 charge, as amended, alleged racial discrimination and could serve as the basis for this cause of action. Additionally, the 1974 investigation by EEOC, whether immediately triggered by the 1974 amendment or not, arose out of the 1971 charge and the reasonable cause determination would support this action under *Equal Employment Opportunity Commission v. General Electric Co., supra.*

■ Hardee's further contends that no amendment is proper because the 1971 charge alleged acts on the part of Burger King and not Hardee's. Although there is some ambiguity in the wording as to who was retaliating, the charge expressly named Hardee's as the party "who discriminated against [me]." In light of the liberal interpretation to be given charges, *Sanchez v. Standard Brands, Inc., supra,* the Court holds the 1971 charge did name Hardee's as re-

---

10. Even if the argument were legally correct, summary judgment would be unavailable in this case, for there would be a genuine issue of fact concerning whether the 1974 investigation was *in fact* an investigation of the 1971 or 1973 charge.

spondent and that the amendment is proper.

For the foregoing reasons, the Court will at this time deny the defendant's motion to dismiss and motion for summary judgment as to the 42 U.S.C. § 2000e, *et seq.*, claim. This denial is without prejudice to the defendant's right to renew the motions, if discovery reveals that such renewal is warranted, or to assert the same as affirmative defenses during trial of the action.

It is, therefore, ORDERED that the defendant's motion for summary judgment as to the 42 U.S.C. § 1981 claim be, and the same hereby is, GRANTED. It is further ORDERED that the defendant's motion to dismiss and motion for summary judgment as to the 42 U.S.C. § 2000e, *et seq.*, claim be, and the same hereby are, DENIED. A judgment will be entered accordingly.