529 F.2d 483
 12 Fair Empl.Prac.Cas. 5, 11 Empl. Prac. Dec.
P 10,621
Larry J. WILLIAMS, Plaintiff-Appellant, Cross-Appellee,
v.
SOUTHERN UNION GAS COMPANY, Defendant-Appellee, Cross-Appellant,
United States Equal Employment Opportunity Commission, Amicus Curiae,
Newspaper Agency Corporation, Amicus Curiae in the Cross Appeal.
 Nos. 75--1104 and 75--1105.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 17, 1975.
Decided Jan. 21, 1976.
 
 Robert J. Laughlin, Estancia, N.M. (Ralph K. Helge, Pasadena, Cal., on the brief), for plaintiff-appellant and cross-appellee.
 Owen M. Lopez, Santa Fe, N.M. (Jeffrey R. Brannen, Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, N.M., on the brief), for defendant-appellee and cross-appellant.
 Charles L. Reischel, Asst. Gen. Counsel, Washington, D.C. (Julia P. Cooper, Acting Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, Washington, D.C., on the brief), for Equal Employment Opportunity Commission, amicus curiae.
 James S. Lowrie and Edward J. McDonough, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, on the brief for Newspaper Agency Corp., amicus curiae.
 Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is a Civil Rights case based on a claim of unlawful job discharge. From July 1962 until October 3, 1970, Larry Williams was employed by the Southern Union Gas Company, initially as a dehydrator repairman's helper and later as a production repairman. On October 3, 1970, a Saturday, Williams was fired by Southern Union when he refused to report for work. Williams was at that time a member of the Worldwide Church of God. One of the tenets of this church is that its members should not work on the Sabbath, and Sabbath for this church is from sundown Friday to sundown Saturday. The reason given by Williams for not reporting for work on Saturday, October 3, 1970, was that his religion forbade working on the Sabbath.
 
 
 2
 On March 26, 1971, Williams filed a complaint with the Equal Employment Opportunity Commission alleging that Southern Union in firing him had discriminated against him because of his religion and in so doing had engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964. On May 30, 1973, the Commission sent a letter to Williams advising him that compliance efforts had been unsuccessful and that he could bring a private action if he so desired. More specifically, this letter of May 30, 1973, advised Williams that if he decided to sue he should request a 'Right-to-Sue' letter from the Commission and that he would have 90 days from the time the 'Right-to-Sue' letter was received within which to bring an action against Southern Union. Williams did request such a letter, and on December 6, 1973, the 'Right-to-Sue' letter was issued. Williams instituted the present action under 42 U.S.C. § 2000e, as amended, on March 6, 1974. On trial the trial court found for Southern Union and entered judgment dismissing the action 'on the merits.' Williams now appeals.
 
 
 3
 By separate appeal Southern Union seeks review of the trial court's ruling that it had subject matter jurisdiction. In this regard it is Southern Union's position that the suit was not timely brought. The background facts must be developed in some detail.
 
 
 4
 When Williams went to work for Southern Union in 1962 he was informed that it was a company policy that all employees should be available for work seven days a week, 24 hours per day. Southern Union felt this was necessary inasmuch as it was a public utility and as such was obligated to provide continuous and uninterrupted natural gas service to the general public. It was also Southern Union's policy, however, to schedule its employees for only five days of work each week, eight hours per day. Williams in 1962 did not belong to any church and hence was under no prohibition, religious or otherwise, from working any day in the week.
 
 
 5
 During the fall of 1969 Williams became a member of the Worldwide Church of God. He informed his supervisor of his conversion and advised him that he would no longer be able to work between Friday at sundown and Saturday at sundown. The supervisor, one Al Dean, explained that it would be difficult to promise that Williams would never be called on to work on a Saturday, but that he would do what he could. Coincidentally, or otherwise, at the time of his conversion Williams' regular work week was from Sunday through Thursday, with both Friday and Saturday off. It would appear that for obvious reasons most all employees desired to have Saturday off. At his supervisor's suggestion Williams checked back with his minister and was informed that he could work on Saturdays if there were an emergency, but that since this was a matter between Williams and his God, he (Williams), and not his employer, would have to make the decision as to whether a true emergency existed.
 
 
 6
 From the date of his conversion in the fall of 1969 until October 3, 1970, Williams was never asked to work on Saturday. During the fall of 1970 Williams was assigned to work on the Dogie Canyon project in northwest New Mexico, a rather isolated location. This was a new pipeline about 25 miles long that was to expand the capacity of the pipeline system which took natural gas from the production area of the San Juan Basin and supplied the Las Alamos-Santa Fe area with natural gas. This project was running somewhat behind schedule and Southern Union, at least, was of the view that the pipeline had to be completed, purged of air, and brought up to pressure by Saturday, October 3, 1970.
 
 
 7
 On Wednesday, September 30, 1970, Williams went to Dean, his supervisor, and told him that Thursday, October 1, 1970, was a special religious holiday in his church and that he would have to have the day off. Dean agreed that Williams could take Thursday off, but explained that the pipeline would have to be pressured up by Saturday, and that if the work were not completed by Friday night Williams would have to work Saturday. Williams testified that he made no protest at this time about the possibility of Saturday work, as he thought the project might very possibly be completed by Friday, and any confrontation would thereby be avoided.
 
 
 8
 So, Williams took Thursday off. Unfortunately for Williams, the job was not completed on Friday and Friday evening Williams called Dean at the latter's home and told Dean that he would not report for work on Saturday morning, as he had been directed. Dean's response was that if Williams didn't show up he would be fired. Dean himself was scheduled to go on vacation starting Saturday, October 3, 1970. When Williams didn't show up for work on Saturday, October 3, 1970, Dean delayed the start of his vacation and completed the work himself. It was in this factual setting that Dean fired Williams.
 
 
 9
 We shall first consider whether the trial court had subject matter jurisdiction. In this general connection Southern Union contends that the present action is barred by two statutes of limitation contained in the Civil Rights Act.
 
 
 10
 The statute relied on by Southern Union in its jurisdictional argument is 42 U.S.C. § 2000e--5(f)(1) and reads in pertinent part as follows:
 
 
 11
 If within one hundred and eighty days from the filing of such a charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . ..
 
 
 12
 It is Southern Union's position that the statute set forth above should be read to limit the jurisdiction of a United States District Court to private actions brought within 270 days (180 plus 90) from the date the complaint is filed with the Commission. The instant case was not filed with the United States District Court for the District of New Mexico until March 6, 1974, some 1,057 days after Williams made his complaint to the Commission on March 26, 1971. Hence, argues Southern Union, the trial court should have dismissed the action because of a lack of subject matter jurisdiction inasmuch as the action was not instituted within 270 days after Williams first made his complaint to the Commission.
 
 
 13
 Alternatively, Southern Union contends that the present proceeding is barred by the failure of Williams to institute the present proceeding within 90 days after receipt of the letter from the Commission that conciliation efforts had failed and that Williams had the right to bring a private action on his own behalf. In this regard Southern Union argues that this 90-day period began to run on May 30, 1973, when the Commission first wrote Williams of the unsuccessful effort to conciliate and his right to sue. As mentioned above, this letter of May 30, 1973, advised Williams that if he decided to sue, he should first request a 'Right-to-Sue' letter, and that he would then have 90 days after the receipt by him of the 'Right-to-Sue' letter within which to file his action. This second letter from the Commission, i.e., the 'Right-to-Sue' letter, was not issued until December 6, 1973, and Williams did institute his suit within 90 days thereafter. Southern Union challenges the propriety of this 'two-letter'[1] procedure and, as indicated, contends that in the instant case, the 90-day period commenced at the time Williams received the May 30 letter and that Williams did not institute the present proceedings within 90 days from May 30, 1973. Hence, says Southern Union, the trial court lacked subject matter jurisdiction for failure to comply with the 90-day requirement, as well as the 270-day requirement.
 
 
 14
 Our study of the matter convinces us that the trial court had subject matter jurisdiction and that Williams' suit was not barred by any statute of limitation. The Eighth Circuit was quite recently faced with the identical jurisdictional argument made here by Southern Union. See Tuft v. McDonnell Douglas Corporation, 517 F.2d 1301 (8th Cir. 1975), cert. denied,44 U.S.L.W. 3394 (Jan. 12, 1976). The Eighth Circuit held in Tuft that the 180-day limitation contained in 42 U.S.C. § 2000e--5(f) does not serve as a time deadline for the Commission to issue any notice to the complaining party. Furthermore, the Eighth Circuit also held that the Commission's 'two-letter' procedure was not violative of the statute and that the 90-day limitation within which the complaining party had a right to sue did not commence until the complaining party actually received the formal 'Right-to-Sue' letter. We agree with the interpretation given 42 U.S.C. § 2000e--5(f) by the Eighth Circuit and subscribe to the rationale of Tuft. For other cases bearing on this particular matter and which are generally supportive of the result here reached, see E.E.O.C. v. Kimberly-Clark Corp., 511 F.2d 1352 (6th Cor. 1975), petition for cert. filed, 44 U.S.L.W. 3097 (U.S. July 21, 1975) (No. 119); E.E.O.C. v. Louisville & Nashville R.R., 505 F.2d 610 (5th Cir. 1974), cert. denied, 423 U.S. 824, 96 S.Ct. 39, 46 L.Ed.2d 41 (U.S. Oct. 6, 1975); and E.E.O.C. v. Cleveland Mills Co., 502 F.2d 153 (4th Cir. 1974), cert. denied, 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975). It is on this basis that we conclude that Williams' action was not brought untimely, and that the trial court was correct in holding that it had subject matter jurisdiction.
 
 
 15
 As indicated, the trial court ruled on the merits in favor of Southern Union. Its findings and conclusions are deemed by us to be at the very heart of this controversy and accordingly have been set forth in the entirety as Appendix A. For the sake of continuity, it is suggested that a reading of these findings at this point would be helpful.
 
 
 16
 42 U.S.C. § 2000e--2(e) provides that it is an unlawful employment practice for an employer to discriminate against an employee because of his religion. Under a regulation promulgated in 1966 an employer was allowed to establish a 'normal work week' which would be generally applicable to all employees even though such would not operate uniformly in its effect upon the religious observances of all employees. In 1967 the following regulation which now appears as 29 C.F.R. § 1605.1 (1975) was promulgated:
 
 
 17
 Observation of the Sabbath and other religious holidays.
 
 
 18
 (a) Several complaints filed with the Commission have raised the question whether it is discrimination on account of religion to discharge or refuse to hire employees who regularly observe Friday evening and Saturday, or some other day of the week, as the Sabbath or who observe certain special religious holidays during the year and, as a consequence, do not work on such days.
 
 
 19
 (b) The Commission believes that the duty not to discriminate on religious grounds, required by section 703(a)(1) of the Civil Rights Act of 1964, includes an obligation on the part of the employer to make reasonable accommodations to the religious needs of employees and prospective employees where such accommodations can be made without undue hardship on the conduct of the employer's business. Such undue hardship, for example, may exist where the employee's needed work cannot be performed by another employee of substantially similar qualifications during the period of absence of the Sabbath observer.
 
 
 20
 (c) Because of the particularly sensitive nature of discharging or refusing to hire an employee or applicant on account of his religious beliefs, the employer has the burden of proving that an undue hardship renders the required accommodations to the religious needs of the employee unreasonable.
 
 
 21
 The foregoing regulation was given legislative approval when Congress amended the definition of religion, as that term is read in the Act, to read as follows:
 
 
 22
 The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j).
 
 
 23
 Under the applicable statute and regulations the question before the trial court was whether Southern Union demonstrated that it was unable to reasonably accommodate to Williams' religious practice without undue hardship in the conduct of its business. The key phrases are 'reasonably accommodate' and 'undue hardship.' In our view the issues before the trial court in the instant case were basically questions of fact, and not ones of law. In such event Williams on appeal is not entitled to a trial de novo, and the trial court's resolution of the matter cannot be overturned unless it be 'clearly erroneous.' Fed.R.Civ.P. 52. Cummins v. Parker Seal Co., 516 F.2d 544 (6th Cir. 1975), petition for cert. filed, 44 U.S.L.W. 3207 (U.S. Sept. 25, 1975) (No. 478); Williams v. Eaton, 468 F.2d 1079 (10th Cir. 1972), and Keyes v. School Dist. No. 1, Denver, Colorado, 445 F.2d 990 (10th Cir. 1971), cert. denied, 413 U.S. 921, 93 S.Ct. 3033, 37 L.Ed.2d 1043 (1973). The trial court's findings in the instant case are not clearly erroneous and are supported by the record. It is on this basis that we affirm.
 
 
 24
 Most of the civil rights cases concerning those who celebrate the Sabbath on Saturday involve situations where the employer attempts to compel the employee to work on Saturday as a part of his normal work week. Such is not true in the instant case. On the contrary Williams' normal work week was Sunday through Thursday. Furthermore, Southern Union did not ask Williams to perform work on a Saturday until approximately one year after his conversion. Williams' boss earlier explained that he could not promise Williams that he would never be asked to work on Saturday, and that he might well be asked to work in an emergency situation. The very nature of Southern Union's business required that service be available to the public 24 hours a day, 7 days per week. Someone was going to have to work on Saturdays, even though all employees understandably preferred Saturday off. Indeed, Williams himself recognized that his religion did not preclude him from working on Saturdays in the event of a special emergency. However, Williams insisted that he, rather than his employer, had the exclusive right to determine just what constituted an emergency.
 
 
 25
 Getting down to the events which immediately preceded Williams' discharge, Southern Union was engaged in certain pipeline construction which it felt had to be completed by Saturday, October 3, 1970. The record is such as to permit the inference that completion of the pipeline by that date was of critical importance. And such fact we deem to be of great significance and distinguishes the instant case from other cases cited to us by counsel, i.e., we are not concerned here with the employer's effort to compel Williams to work on a Saturday as a part of his normal work week; rather this is a situation where the employer was faced with an emergency situation in an isolated work area where there was no reserve of manpower who were qualified to complete the project and could be called in on a moment's notice. Williams, apparently without giving notice, advised his boss on Wednesday, September 30, 1970, that he was taking off Thursday, October 1, 1970, a regular work day, for a special religious holiday. Whether this absence in anywise contributed to the failure to complete the project by Friday, October 2, 1970, is not disclosed by the record. In any event, the project was not completed by Friday, October 2, 1970, and it was only in this circumstance that Southern Union for the first time asked Williams to work on Saturday. When Williams refused, his boss had to delay his long scheduled vacation and he completed the job himself.
 
 
 26
 The phrases 'reasonably accommodate' and 'undue hardship' are relative terms and cannot be given any hard and fast meaning. In a sense the case boils down to a determination as to whether Southern Union acted reasonably under all the circumstances. On the one hand it had a duty to at least try to accommodate Williams' religious practices. On the other hand it also had a duty not only to serve the consuming public on a continuous and uninterrupted basis but also to adhere to employment practices that were fair to its other employees. In our view whether Southern Union in the instant case acted in a reasonable manner is a matter upon which reasonable minds might conceivably differ. Such fact, however, does not permit us to substitute our judgment for that of the trial court. It was the trial judge who heard the testimony and saw the various witnesses. He is the one who draws the inferences and finds the facts. In such circumstances we should not disturb his determination of the matter.
 
 
 27
 Judgment affirmed.
 
 
 28
 APPENDIX A.
 
 FINDINGS OF FACT
 
 29
 1. That the plaintiff Larry Williams was hired on July 20, 1962, by defendant, and that at the time of his employment the plaintiff was fully aware that defendant's operation required its employees' availability on a seven days a week, twenty-four hours a day basis.
 
 
 30
 2. That in December, 1969, plaintiff became a member of the World Wide Church of God, which church believes in keeping of Sabbath day from sundown on Friday to sundown on Saturday.
 
 
 31
 3. That plaintiff notified his supervisor Al Dean of his conversion, and as a result his supervisor accommodated his religious needs by seeing that plaintiff was not scheduled to work on Saturdays in regular course thereafter.
 
 
 32
 4. The plaintiff's supervisor notified him that he would be required to work on the Sabbath only in emergency situations, but the plaintiff insisted that he would have to be the sole judge of whether or not there existed an emergency situation.
 
 
 33
 5. That during the week prior to his discharge, plaintiff requested leave on Thursday, October 1, 1973, a regularly scheduled working day, so that he could attend a religious observance in Albuquerque, and his request was accommodated.
 
 
 34
 6. In accommodating his request, however, plaintiff's supervisor cautioned the plaintiff that the project on which the plaintiff was then working and which involved a large pipeline project of critical importance to the defendant had to be completed as soon as possible due to many factors. Plaintiff's supervisor also advised plaintiff that if the job were not completed by sundown Friday, the plaintiff would be required to work on Saturday in order to see that the pipeline was put in service.
 
 
 35
 7. There were no other employees of the defendant besides the plaintiff's immediate supervisor who were capable or familiar enough with the pipeline project to see that the pipeline was put in service as required.
 
 
 36
 8. The plaintiff's immediate supervisor had been scheduled for vacation commencing Saturday, October 3, 1970, for more than six months prior and had made arrangements to meet out-of-state residents in a remote location where they could not be reached by phone in order to begin an elk hunt.
 
 
 37
 9. When it became obvious to the plaintiff's supervisor that the pipeline project would not be finished by sundown Friday, October 2, 1970, and that the project would have to be finished Saturday, October 3, 1970, he so notified the plaintiff who refused to work on Saturday, October 3, 1970.
 
 
 38
 10. As a result of his refusal to work on Saturday, plaintiff was terminated.
 
 
 39
 11. That during the course of his employment between July of 1962 through October 2, 1970, plaintiff did apply for promotion to production technician.
 
 
 40
 12. That the plaintiff was not promoted to production technician, and the person who was promoted to that position was more qualified than the plaintiff.
 
 
 41
 13. That defendant at all material times reasonably accommodated the religious beliefs of the plaintiff.
 
 
 42
 14. That to have accommodated the plaintiff's refusal to work on Saturday, October 3, 1970, would have placed an undue hardship on the defendant and the conduct of its business, and as a result, defendant was justified in discharging plaintiff because of his refusal to work.
 
 
 43
 15. That defendant did not discriminate against the plaintiff on account of his religious beliefs.
 
 CONCLUSIONS OF LAW
 
 44
 1. That at all material times hereto the defendant complied with the relevant provisions of the Civil Rights Act of 1964 as amended in that it reasonably accommodated the religious needs of the plaintiff, and that to have accommodated the plaintiff during the instance in question would have placed an undue hardship on the defendant and the conduct of its business operations.
 
 
 45
 2. That defendant did not discriminate against the plaintiff on account of his religious beliefs in violation of the Civil Rights Act of 1964 as amended.
 
 
 
 [1]
 We are advised that the 'two-letter' procedure is no longer used by the Commission