Mary LACY, Appellant,

v.

CHRYSLER CORP., Appellee.

Yvonne HARRIS, Appellant,

v.

SHERWOOD MEDICAL INDUSTRIES, Appellee.

Jimmie WHITFIELD, Appellant,

v.

CERTAIN–TEED PRODUCTS et al., Appellees.

Nos. 74–1949, 74–1981 and 75–1077.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1975.

Decided March 4, 1976.

Harvey Tessler, Clayton, Mo., for appellant Lacy in No. 74–1949.

David A. Lang, St. Louis, Mo., for appellant Harris in No. 74–1981.

David A. Lang, St. Louis, Mo., for appellant Whitfield in No: 75–1077.

Charles L. Reischel, Asst. Gen. Counsel, EEOC, Washington, D. C., for EEOC amicus. William A. Carey, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel and Juan R. Rivera, Attys., EEOC, Washington, D. C., filed brief for amicus curiae. Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg and Charles L. Reischel, Attys., Equal Employment Opportunity Commission, Washington, D. C., filed supplemental brief for amicus curiae.

Charles A. Newman, St. Louis, Mo., for appellee Chrysler in No. 74–1949. Charles A. Newman and Edwin D. Akers, Jr., St. Louis, Mo., filed brief and supplemental brief for appellee.

D. J. Sullivan, St. Louis, Mo., for appellee Sherwood Medical Industries, Inc., in No. 74–1981. Brief and supplemental brief for appellee were filed by D. J. Sullivan and Timothy L. Stalnaker, St. Louis, Mo.

Mark S. Dichter, Philadelphia, Pa., for appellee Certain-Teed Prod. Co., in No. 75–1077. Brief and supplemental brief for appellee were filed by Mark S. Dichter and Joseph I. Goldstein, Philadelphia, Pa., and Eugene K. Buckley, Evans & Dixon, St. Louis, Mo.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, WEBSTER, and HENLEY, Circuit Judges, en banc.

BRIGHT, Circuit Judge.

In these three consolidated appeals, appellants (plaintiffs in the district court) urge that the trial courts erred in dismissing their actions by ruling that the 90-day period to commence individual civil actions against an employer under provisions of Title VII of the Civil Rights Act of 1964, as amended,[1] 42 U.S.C. § 2000e et seq. (Supp.

---

1. The pertinent language of this provision is included in § 706(f)(1), which reads in part as follows:

   If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) [state or local agencies] of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision,

II, 1972), begins to run from the date that the Equal Employment Opportunity Commission (EEOC or Commission) advises the employee-charging party by letter that conciliation efforts with the employer have failed.

Although we previously decided this issue in *Tuft v. McDonnell Douglas Corp.*, 517 F.2d 1301 (8th Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641, 44 U.S.L.W. 3394 (1976), we granted an *en banc* hearing in this case to pass upon procedures of the Commission in factual settings varying from those in *Tuft.*

We reverse the district court judgments in *Lacy v. Chrysler Corp.*, No. 74–1949, and *Harris v. Sherwood Medical Industries*, E.D. Mo., 386 F.Supp. 1149 and reinstate the appellants' actions. We affirm the dismissal in *Whitfield v. Certain-Teed Products*, E.D.Mo., 389 F.Supp. 274.

We turn to the factual background and discuss each of these actions.

### I. *Lacy v. Chrysler Corporation.*

Mary Lacy, a black woman, filed a racial discrimination charge against Chrysler Corporation with the EEOC on or about September 7, 1972, asserting discriminatory treatment because of certain layoff and recall provisions of Chrysler. On July 17, 1973, the St. Louis, Missouri, district office of the EEOC advised Ms. Lacy by letter "that conciliation efforts in your case have failed." The letter went on to state that

[a]nytime now you may request your letter of Right to Sue. This is done by requesting, in writing, from the District Director, Mr. Eugene P. Keenan.

When you request your letter of Right to Sue, you have only 90 days to get a lawyer to file suit for you in Federal District Court. It is not wise to request your Right to Sue letter until you have obtained a lawyer who has agreed to represent you.

Thereafter, on August 13, 1974, following a request from Ms. Lacy, the district office issued a letter to Ms. Lacy, entitled "Notice of Right to Sue within 90 days." The full text of this letter is reproduced in the margin.[2] The dates disclose that the so-called "Right to Sue" letter was mailed approximately 13 months after the EEOC had notified Ms. Lacy of the failure of conciliation with her employer. She filed her action against Chrysler in the United States District Court for the Eastern District of Missouri on September 13, 1974, thirty days after receiving the Right to Sue letter, but some 14 months after she had received the notice of failure of conciliation. The district court ruled that the action had not been brought within the 90-day period provided for in § 706(f)(1), referred to in note 1 *supra*, and dismissed the case.

### II. *Harris v. Sherwood Medical Industries.*

Yvonne Costello Harris, a black former employee of Sherwood Medical Industries, filed a complaint with the EEOC that Sher-

---

shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge * * *. [42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972).]

**2.**   NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

In Case No. YSL3–297 before the Equal Employment Opportunity Commission, United States Government.
YOU ARE HEREBY NOTIFIED THAT:
   WHEREAS, This Commission has not filed a civil action with respect to your charge as provided by Section 706(F)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*: and,
   WHEREAS, this Commission has not entered into a conciliation agreement to which you are a party;

THEREFORE, pursuant to 706(F) of Title VII, you may, *within 90 days of your receipt of this Notice*, institute a civil action in the United States District Court having jurisdiction over your case.
Should you decide to commence judicial action, you must do so within 90 days of the receipt of this letter or you will lose your right to sue under Title VII.
If you are not represented by counsel and you are unable to obtain counsel the Court may, in its discretion, appoint an attorney to represent you.
Should you have any questions concerning your legal rights or have any difficulty filing your case in court, please call Ms. Gretchen Huston of this office at 314–622–5571.

wood had discriminated against her with regard to supervision and promotion and had discharged her on the basis of her race. On March 16, 1972, the EEOC referred her charge to the Missouri Commission on Human Rights as required by 42 U.S.C. § 2000e–5(d). The state commission, without resolving the complaint, returned the plaintiff's file to the EEOC on June 30, 1972. Thereafter, more than one year later on September 21, 1973, the EEOC's district office in St. Louis wrote Ms. Harris and advised her that conciliation efforts on her behalf had failed. The text of the letter was the same as the initial letter mailed to Mary Lacy, referred to above. Thereafter, on February 4, 1974, the district director in St. Louis sent Ms. Harris a formal Right to Sue letter with the text identical to the Right to Sue letter mailed to Ms. Lacy and quoted in note 2 *supra*. She filed her Title VII action in the United States District Court for the Eastern District of Missouri against Sherwood Medical Industries on March 1, 1974, more than 90 days after receiving the letter from the EEOC office in St. Louis advising that conciliation efforts in her case had failed but only 24 days after receiving the formal Right to Sue letter. The district court dismissed the action on defendant's motion for summary judgment on grounds that the suit had not been commenced within the 90-day period prescribed by § 706(f)(1). *Harris v. Sherwood Medical Industries,* 386 F.Supp. 1149 (E.D.Mo.1974). This appeal followed.

III. *Analysis of Lacy and Harris.*

Thus, both Ms. Lacy and Ms. Harris brought Title VII actions within 90 days after receiving a formal notice of right to sue from the EEOC but more than 90 days from the receipt of notice that conciliation efforts had failed in each individual case. The underlying facts in each case reflect a two-letter procedure followed by the EEOC. In the first letter, the EEOC advised the charging party only that conciliation had failed and that a Right to Sue letter could be requested. The second letter formally notified the complainant that (1) the Commission had not filed a civil action with

respect to the charge; (2) that the Commission had not entered into a conciliation agreement respecting the claim; and (3) that the complainant had a right to sue in the United States District Court having jurisdiction over the case within 90 days of the receipt of this notice.

In *Tuft v. McDonnell Douglas Corp.,* 517 F.2d 1301 (8th Cir. 1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641, 44 U.S.L.W. 3394 (1976), we considered the identical two-letter procedure followed by the Commission and we held that the first letter advising the complainant of the failure of conciliation efforts did not initiate the running of the 90-day period. In that case we undertook an extensive review of the 1972 amendments to the Act, noting in particular that Congress by these amendments had now authorized the Commission to institute legal actions under Title VII. We determined that the amended statute required notification to the aggrieved party at the conclusion of the final step in the administrative process, *i. e.,* after the 1972 amendments, upon the Commission's determination not to file suit.

We reasoned as follows:

This section [§ 706(f)], read in its entirety, calls upon the Commission, in cases of private employers, or the Attorney General, in cases of governmental employers, to "notify" the aggrieved party upon a determination not to file suit.

In the absence of a demand from the complainant, the notice from the Attorney General obviously must follow his decision not to file suit. Since the Commission similarly determines whether to institute a civil action against other employers, it follows that it also must issue its notice upon determining that it will not sue. Thus, absent a demand from the aggrieved party, § 706 requires an official notification to the complainant upon making the decision not to file suit, this determination representing the final step of administrative processing. * * *

This reading of the notification provisions of § 706(f) comports with the ex-

pressed congressional desire to place the primary burden of enforcement of Title VII cases on the Commission rather than the private complainant. If the statute required the issuance of notice at some intermediate stage of the administrative process, an aggrieved person would be required to either sue within 90 days or lose his right to sue without knowing whether or not the Commission would file suit on his behalf. Moreover, this construction remains consistent with pre-1972 procedures which generally geared the issuance of notice to exhaustion of administrative remedies. Before the 1972 amendments administrative procedures ended with the termination of conciliation efforts while under the current statute these administrative procedures end with a determination of whether to file suit. [*Id.* at 1309 (footnote omitted).]

We added:

Thus, the first Commission letter of February 13, 1974, must be read literally, as informing Ms. Tuft that conciliation had failed and advising her that she might request the formal statutory notice from the Commission as a prerequisite to filing her own suit. Since the Commission had not then exhausted its administrative procedures under Title VII, no basis exists, legally or equitably, for construing the first letter as a statutory notice initiating the running of the 90-day limitation period. [*Id.* at 1309–10.][3]

**3.** We noted in *Tuft* that the Commission had advised us during the appellate proceedings that at the time the first letter was sent to Ms. Tuft, it had not determined whether to file suit. Documents submitted by the Commission show that Ms. Tuft's case had been referred to the Commission Litigation Center subsequent to the mailing of the first letter and that the file was returned to the Commission's office in St. Louis subsequent to the issuance of the second letter. 517 F.2d at 1309 n. 16.

Similarly, an amicus brief by the EEOC filed in the instant cases discloses records indicating that the file in *Lacy* was referred to the Commission Litigation Center after the first letter had been sent by the St. Louis office of the EEOC to Ms. Lacy, and that while it had been returned to the district office on November 12, 1973, the file was again forwarded to the Liti-

The Tenth Circuit has recently followed the rationale of *Tuft* in *Williams v. Southern Union Gas Co.,* 529 F.2d 483 (10th Cir., 1976).

In urging that the *Tuft* case ought not to control the Mary Lacy appeal, the appellee in that case, Chrysler Corporation, points to four distinctions which it terms significant between the facts in *Lacy* and those surfacing in *Tuft.* They are as follows: (1) The delay was substantially greater between the issuance of the first and second letters in *Lacy* than in *Tuft.* In *Tuft,* the delay between the first and second letters amounted to about four months, but in *Lacy* the delay extended to 13 months; (2) Chrysler has been directly prejudiced by the delay encountered in the two-letter system since its potential liability for backpay has been increased during this 13-month hiatus between the two letters;[4] (3) Since Mary Lacy was represented by counsel as early as December 1973, she cannot show reliance on statements of the EEOC in its letters to her as was the case with Ms. Tuft; (4) Unlike *Tuft,* which involves sex discrimination, Ms. Lacy has charged Chrysler with race discrimination. Thus, even if her claim under Title VII should be dismissed, relief may be available to her under other federal and state statutes.

In the *Yvonne Harris* case, appellee-Sherwood Medical Industries attempts to distinguish the facts in this case from *Tuft* by focusing on the preservation by Harris of

gation Center on September 14, 1974 (after the notice of right to sue had been issued).

In *Harris,* Commission records reflect that conciliation failed on September 1, 1973, the case was referred to the appropriate litigation center in October of 1973, and returned on February 11, 1974, after the right to sue letter had been issued on February 8, 1974. What is crucial in determining that the first letter of the two-letter procedure cannot be construed as a statutory notice affording the claimant the right to sue is the fact that the Commission's administrative procedures had then not run its full course.

**4.** Chrysler refers to *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), and the discussion therein relating to backpay.

other remedies for race discrimination which were not available to Ms. Tuft.

■ We reject appellees' proffered distinctions as a basis for reaching a result contrary to the *Tuft* case. Our determination here and in *Tuft* rests upon construction of a statute. In *Tuft,* we summarized the notice procedures triggering the 90-day statute of limitations as follows:

1) Upon a dismissal of the charge by the Commission, the statutory notice must issue promptly to the aggrieved party and the respondent.

2) The complainant may demand the statutory notice any time after 180 days have elapsed from the filing of the complaint if the Commission has not dismissed his complaint, achieved a conciliation agreement, or filed a civil action.

3) Otherwise, the statutory notice must issue following a determination by the Commission or, in appropriate cases, the Attorney General, that a civil action will not be filed. [517 F.2d at 1309 (citation omitted).]

In neither *Lacy* nor *Harris* did the first letter, the notice of failure of conciliation, inform the complainant that the Commission had declined to sue. Thus, under the statute as construed in *Tuft,* the first letter did not trigger the 90-day period. The second letter, the formal right to sue letter, initiated the running of the 90-day period.

The appellees also contend that *Tuft* is inconsistent with the rationale of *DeMatteis v. Eastman Kodak Co.,* 2 Cir., 511 F.2d 306, *modified on other grounds,* 520 F.2d 409 (2d Cir. 1975). In *DeMatteis,* the Second Circuit was presented with a two-letter situation. The first letter was issued under the provision of § 706(f)(1), which requires the Commission to notify the aggrieved party "if a charge filed with the Commission * * * is dismissed by the Commission * * *." [5] The first letter specifically informed DeMatteis of his right to bring a civil action. DeMatteis' attorney, thereafter, requested a second notice of right to sue

and brought an action within 90 days of receiving the second right to sue letter, but not the first.

The Second Circuit specifically noted that "[t]here was no consideration given to conciliation * * * as that stage in the procedures was never reached." 511 F.2d at 308. Also, since the Commission dismissed the complaint, the charge never reached the stage of suit consideration. The court further noted that the precise issue presented was

> whether the limitations period began to run from the receipt of the notice on May 8, 1973 of the Commission's determination that there was "not reasonable cause to believe that the charge was true" and the dismissal of the charge, as the trial court held, or from the latter receipt of the notice of right to sue on July 26, 1973, as the appellant claims. [*Id.* at 309.]

The *DeMatteis* court particularly observed the difference between a dismissal of a charge by the Commission, the issue there presented, and the circumstances (as in *Tuft, Harris,* and *Lacy*) in which the Commission had found there was reasonable cause to believe that the charges were true. The *DeMatteis* court said:

> The purpose of the notice of right to sue was definitely to fix a time when the *administrative remedies had ended* and when the 90-day statute of limitations for bringing a suit in the federal court began to run. It applies only to dismissals of charges or other terminations of the administrative proceedings which took place after the effort at conciliation and only in cases in which the Commission had found there was reasonable cause to believe that the charges were true.
>
> There was never any need for such a signal in the case before us. The parties on May 8, 1973 received definite and precise notice that the administrative proceedings had been completed and, in the express words of the regulation, that "the determination . . . [was] *final* when issued; [and] therefore requests for

---

5. *See* summary of notice procedures in *Tuft,* at p. 358, item 1, *supra.*

reconsideration . . . [would] not be granted." [29 C.F.R.] § 1601.19b. [*Id.* at 310 (emphasis added).]

This language comports with our decision in *Tuft.*

The appellees here focus on other language of *DeMatteis* where the court said:

There are described therein [in § 706(f)(1)] four sets of circumstances which, if any one of them occurs, mandate a notification by the Commission (or by the Attorney General, as the case may be) to the person aggrieved; and he (or in certain situations others) may bring a civil action on the charge against the respondent in the appropriate United States District Court "within ninety days after the giving of such notice" by the Commission. *Id.*

The court discussed in a footnote the three sets of circumstances other than dismissal referred to in § 706(f)(1), stating:

When any of the three sets of circumstances referred to in sub-section (f) (1) of 42 U.S.C. § 2000e–5, other than dismissal under sub-section (b), has occurred after some efforts at conciliation have been made, the Commission has the statutory duty under (f) (1), *on its own initiative,* to inform the aggrieved party of the status of his case in the light of the provisions of that statutory sub-section.

At this point, under the regulation, § 1601.25c(d), however, the aggrieved party is left formally to request the Commission for a notice of right to sue—a procedure the operative effect of which is to place in the hands of the aggrieved party the approximate time when he wants the notice to be issued and the 90-day period of the statute of limitations to start running. [*Id.* at 310 n. 6 (emphasis in original).]

Although this language in *DeMatteis,* quoted above, may suggest an inference contrary to the *Tuft* holding, we deem the holding and underlying rationale of *DeMatteis* to be consistent with *Tuft.* The *DeMatteis* court did not undertake to analyze the effect of the 1972 amendments to Title VII, discussed in *Tuft,* or consider precisely when the Commission must issue a notice of right to sue in the absence of a request from the charging party.

We also note that on rehearing the *DeMatteis* court applied its holding prospectively so as to permit the appellant to bring his Title VII action since he had relied upon incorrect advice from the EEOC. *DeMatteis v. Eastman Kodak Co.,* 520 F.2d 409 (2d Cir. 1975).[6] The result reached in *DeMatteis* on rehearing is consistent with part IV of *Tuft.*

Accordingly, on the authority of *Tuft,* we reverse *Lacy* and *Harris.*[7]

---

6. In *Craig v. Eastern Airlines,* 410 F.Supp. 428, 10 FEP cases 1307 (D.Conn.1975), Judge Blumenfeld, a district judge in the Second Circuit, followed the *Tuft* case, and considered the holding in *DeMatteis* as consistent with *Tuft.* This opinion stated:

* * * the [*DeMatteis*] court recognized that different considerations might be involved where the Commission determines that there is reasonable cause to believe that a complainant's charges are true * * *. The court recognized the distinction between such cases where administrative proceedings have not ended and where "it has been difficult for the aggrieved party or the respondent to know exactly when the proceedings by or before the Commission have terminated," *DeMatteis v. Eastman Kodak Co.,* supra, 511 F.2d at 310, * * * and the case before it, where the proceedings had *"terminated at the investigative stage."* * * * Un-

der such circumstances, it noted that the regulatory provision, 29 C.F.R. § 1601.25 (1974), of a Notice of Right to Sue serves the important function of "definitely . . . fix[ing] a time when the administrative remedies [have] ended and when the 90-day statute of limitations for bringing a suit in the federal court [begins] to run." Id. This recognition, while not a specific endorsement of the Commission's procedure, is in harmony with the conclusion reached by the Eighth Circuit in Tuft. (Emphasis in original).

7. Appellees also cite *Cleveland v. Douglas Aircraft Co.,* 509 F.2d 1027 (9th Cir. 1975), as containing a rationale inconsistent with the *Tuft* case. However, in *Cleveland,* which arose before the 1972 amendments, the EEOC sent two letters, both of which were clearly right to sue letters. We find no inconsistency between *Tuft* and *Cleveland.*

IV. *Whitfield v. Certain-Teed Products.*

█ Unlike *Tuft, Lacy,* or *Harris,* this case involved a three-letter procedure. In 1972, Whitfield, a black, filed a charge against his former employer alleging that he had been discharged because of his race. After the usual processing and unsuccessful efforts at conciliation, on July 30, 1973, the EEOC wrote Whitfield a letter, identical in terms to the first letter in *Tuft, Harris,* and *Lacy,* informing him that conciliation had failed and that he could request a right to sue letter at any time. Whitfield took no action. Thereafter, more than a year later, on September 4, 1973, the EEOC wrote Whitfield a second letter specifically advising him that the Commission had decided not to file suit in his case. The text recited:

> This office has referred your case to the Commission's Regional Litigation Center for consideration as one which the Commission's General Counsel would take into Court. The Litigation Center has rejected your case for court action.
>
> Title VII of the Civil Rights Act of 1964, as amended, provides that you may file a suit in Federal District Court represented by a private lawyer. In order to file such a suit, you must request in writing, a "Right to Sue" letter from me as District Director.
>
> It is always wise to secure your own lawyer before you request a "Right to Sue" letter from the Director. Once you receive that letter, you have only 90 days to file the suit in Court.
>
> Having the Commission reject your case for Court action does not necessarily mean that it is a poor case. It may mean that there are too many cases being submitted to the Commission for Court action and too few lawyers to handle them. The Commission has expended a considerable amount of time and money investigating and otherwise handling your case. You should certainly take the next step in getting your case to court by calling our attorney, Ms. Gretchen Huston at 622–4126. She will assist you in finding an attorney, possibly at no cost to you. In some cases, attorneys will take your case on a contingent basis. In others, all they ask is the filing fee. Do not let the thought of attorney fees discourage you.

Whitfield did not bring a suit within 90 days of this second letter, but eventually requested a formal right to sue notice which the EEOC sent on November 2, 1973. Assuming delivery of the letter on the next day, plaintiff waited an additional 89 days, until January 31, 1974, before filing a class action lawsuit pursuant to Title VII and 42 U.S.C. § 1981, alleging discriminatory employment practices by his employer and union.

The district court (Judge Regan) dismissed the suit on alternative grounds: 1) that the first letter advising Whitfield of the failure of conciliation initiated the running of the 90-day period to bring an action or 2) that the second letter advising Whitfield that the Commission had rejected his case for court action constituted the statutory notice which initiated the running of the 90-day period. Since the suit was brought some six months following the first letter and 149 days after the second letter, the court dismissed Whitfield's Title VII claim.

The district court's determination that the second letter in this case constituted the statutory notice prescribed by § 706(f) must be sustained. Upon receiving the second letter from the EEOC, the September 4th letter, Whitfield knew that the administrative procedures of the EEOC had terminated and that he could not hope to receive any further administrative assistance from the EEOC.

In *Tuft,* we said that "the statutory notice must issue following a determination by the Commission or, in appropriate cases, the Attorney General, that a civil action will not be filed." 517 F.2d at 1309. Thus, this second letter must be deemed a notice which complies with the statute (§ 706(f)) and serves to initiate the running of the 90-day period.

The appellant, however, citing part IV of the *Tuft* opinion as well as under the rationale of the opinion on rehearing in *De-Matteis,* contends that he should not be

deprived of his right to bring his Title VII suit since he relied on the misleading advice furnished him by the EEOC.

The equities here, however, are substantially different than in *Tuft*. At oral argument, Whitfield's counsel conceded that he had been retained between the first and second letter and that he waited approximately two months after Whitfield received the second letter—the determination by the EEOC that it would not file suit—before even requesting a formal right to sue letter. Upon receiving the second letter, Whitfield knew that the EEOC's administrative procedures had terminated. On the basis of this record, we believe Whitfield's counsel with cooperation from the EEOC consciously misused the administrative process to further delay this litigation. Therefore, Whitfield cannot be deemed an innocent party suffering prejudice through misleading information furnished him by the EEOC. A contrary determination would permit a knowledgeable and informed aggrieved party to postpone indefinitely the issuance of a formal right to sue letter and thus delay indefinitely the initiation of the 90-day period prescribed by law. Moreover, in declining to reinstate the Title VII as-

pects of this action, we note that Whitfield retains his cause of action under § 1981, and will not sustain prejudice in pursuing his cause of action. We affirm the district court's dismissal of the Title VII action in *Whitfield.*

### V. *Delays of the EEOC.*

As an *en banc* court we think it appropriate to comment upon EEOC procedures. The Commission's procedures, as reflected in these cases as well as *Tuft,* indicate that great delays have occurred in the completion of administrative processing of claims brought under Title VII by charging parties.[8]

In an amicus brief filed by the EEOC in these cases, the Commission advises that it has adopted more specific procedures to complete administrative processing of a case once it has been determined that conciliation has failed.[9]

Upon failure of conciliation, the case file is referred to the Regional Attorney for review. The Regional Attorney is under some obligation to recommend referred cases to the Commission for litigation or return them to the district director within 30 days.[10] The EEOC has abandoned its

---

**8.** In the three cases now before us and *Tuft*, the time period between filing a complaint with the EEOC and an administrative determination of failure of conciliation has been as follows: *Tuft* —2½ years; *Lacy*—10 months; *Harris*—over 1 year; *Whitfield*—16½ months. The EEOC then takes additional time to determine whether it will file suit.

**9.** *See* §§ 66, 82, and 84, Vol. I, Procedures, EEOC Compliance Manual, Revised Apr. 4, 1975.

**10.** The pertinent procedures are contained in § 82 of the EEOC Compliance Manual:
82.3 *Upon Failure of Conciliation*—When the District Director determines that conciliation efforts have failed (see Section 66) the District Director shall refer the entire case file to the Regional Attorney using the transmittal memorandum at Exhibit 82–A. For cases of particular interest, the District Director shall also attach a memorandum describing the reasons for wishing to have the case litigated and providing any other information which may assist the Regional Attorney in making a determination. See Section 84 for litigation referral procedures in cases involving state

or local governments, government agencies or political sub-divisions.
82.4 *Copies of Other Pending Charges to be Forwarded*—At the time a case is forwarded to the Regional Attorney for review, the District Director will forward a status report on and copies of all other charges pending against the respondent in that District Office. The purpose of this action is to assist the Regional Attorney in framing the potential lawsuit as broadly as possible.
82.5 *Review by Regional Attorney*—The Regional Attorney will review all referred cases, and within 30 days from receipt will either recommend them to the Commission for litigation or return them to the District Director. If the Regional Attorney cannot meet the 30 day review limit, the Regional Attorney will inform the District Director of this fact.
  (a) *Case Recommended to Commission* —The Regional Attorney shall prepare the presentation memorandum and forward it to the General Counsel for review. A copy of the presentation memorandum will be sent to the appropriate Regional and District Directors at the time the case is forwarded.
  (b) *Case Returned*—The Regional Attorney will prepare a memorandum outlining the

two-letter procedures reflected in *Tuft, Harris,* and *Lacy,* and in other cases. Within 30 days after the administrative procedures end the Commission issues one combined notice of failure of conciliation, determination not to file suit and right to sue letter. Hopefully, procedural changes by the EEOC will avoid some of the legal problems as exemplified in the cases now before us.

Nevertheless, these changes are not likely to materially reduce the delay in processing Title VII claims. We recognize that the Commission has been understaffed and overburdened with claims.[11]

The obligation to adopt regulations which assure the prompt disposition of Title VII claims administratively, within the capabilities of the agency, is a necessity. We urge the Commission to expedite the processing of complaints and to make every effort to ensure that complainants receive prompt attention and processing of their claims and that regulations strictly conform to the statute so that no one can point to improper agency procedures as causing a loss of rights to an aggrieved charging party or producing prejudice to a defendant-employer.

GIBSON, Chief Judge, joined by HENLEY, Circuit Judge, concurs in *Whitfield v. Certain-Teed Prod., et al.,* E.D.Mo., 389 F.Supp. 274 and dissents in *Mary Lacy v. Chrysler Corp.,* No. 74–1949, and *Harris v. Sherwood Medical Ind.,* E.D.Mo., 386 F.Supp. 1149.

I respectfully dissent from the majority's disposition of the *Lacy* and *Harris* cases, which, in my opinion, has perpetuated an error initially promulgated in *Tuft v. McDonnell Douglas Corp.,* 517 F.2d 1301 (8th Cir. 1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641, (1976). The majority's interpretation contravenes the clear language of § 706(f)(1), nullifies the manifest congressional desire to expeditiously resolve employment discrimination controversies and effects an impermissible prejudice against employers or other respondents in Title VII cases.

Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, reprinted, *ante,* p. 354 note 1, establishes four separate and disjunctive contingencies. If (1) a charge is

reasons for not recommending litigation and will transmit it to the District Director along with the case file. Copies of this memorandum will be simultaneously transmitted to the Regional Director and the Chief, Decisions Division, Headquarters. In those instances where the Regional Attorney believes future litigation against a particular respondent may be appropriate, the Regional Attorney will inform the District Director and specify the conditions under which he/she is willing to recommend such litigation. The Regional Attorney will also note those cases which are particularly appropriate for referral to private counsel.

82.6 *Appeals*—If the Regional Attorney's decision as to whether to bring suit is not satisfactory to the District Director, the District Director may request the Regional Attorney to reconsider. The Regional Attorney will review the request within ten days. If the Regional Attorney's disposition is not satisfactory, the District Director may refer the matter to the Regional Agenda Committee. If the appeal cannot be resolved by the Regional Agenda Committee, the Regional Director may forward the appeal to the Director of Compliance for resolution with the Associate General Counsel for Litigation. If the appeal is not resolved, the Director of Compliance may forward the case to the Executive Director for discussion with the General Counsel.

Conciliation Failure—Notice of Right to Sue EEOC Form 161A, will not be issued by the District Director until a final determination that the Commission will not bring a civil action against the respondent has been made. 82.7 *Parties May be Informed of Referral at Discretion of District Director*—District Directors may advise aggrieved persons and other parties at interest that their case has been referred to the General Counsel for litigation review and may indicate when a decision on further Commission action might be anticipated.

11. At oral argument, counsel for the EEOC said that about 100,000 charges are filed with the Commission yearly. Congress should provide the EEOC with sufficient manpower to promptly service its claims. However, some delay as indicated in these cases is chargeable to the EEOC's indefinite procedures for terminating agency action and notifying claimants of their right to sue in federal court.

dismissed by the EEOC, *or* (2) the EEOC has not commenced a civil action within 180 days of the filing of the charge,[1] *or* (3) the Attorney General has not instituted litigation within 180 days of the filing of the charge in the case of governmental entities, *or* (4) the EEOC has not entered into a conciliation agreement to which the aggrieved person is a party within 180 days of the filing of the charge, the EEOC (or the Attorney General as the case may be) has the affirmative obligation to notify the aggrieved person "and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge * * *." 42 U.S.C. § 2000e–5(f)(1) (Supp. III, 1973).

There is no ambiguity in this statutory language. It clearly provides that when an aggrieved person is notified, *inter alia*, that the EEOC has failed to conciliate the charge within the 180-day period, the person must institute a suit within 90 days of notification as a jurisdictional requisite. The majority disregards the clear meaning of this statute and effectively excises that portion of § 706(f)(1) which requires notification upon the failure to enter into a conciliation agreement. The justification for such excision is to promote what is believed to be the congressional intent—no notification is necessary until the EEOC has completely exhausted the lengthy administrative process and decided not to file suit. This approach is unwarranted and effects a judicial amendment to the statute. To do so under the guise of discerning the congressional intent is, I believe, not only impermissible in light of the constitutional principle of separation of powers and of generally accepted rules of statutory interpretation, but the result reached is erroneous.

The judiciary's hermeneutical function is not so uninhibited as to permit a disregard of clear statutory language to advance what is perceived to be the unarticulated concern of Congress.

It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. * * * Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.

*Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917). (Citations omitted.) If a court feels compelled to resort to extrinsic material for the purpose of gleaning the intent of the legislature, all efforts should be made to construe this material in a manner that will give effect to the clear wording of the statute. My review of the statute and its legislative history convinces me that the majority has misinterpreted the congressional intent, failed to give proper weight to the statutory language and rewritten the statute.

The 180-day period contained in § 706(f)(1) is construed by the majority to be a mere time limitation upon the aggrieved person's right to *demand* the statutory notice required as a prerequisite to a private suit. However, § 706(f)(1), by its language, imposes no obligation on the aggrieved person to do anything until notice is actually received from the EEOC. The onus of tendering unsolicited notification to the aggrieved person is properly placed with the EEOC. The statute provides that the EEOC "shall so notify the person aggrieved" if the charge is dismissed or, within 180 days, a civil suit has not been filed or a conciliation agreement has not been negotiated. There is nothing in the statute to support the majority's interpretation that the EEOC's duty to notify is dependent upon receiving a request from the aggrieved party. *Cf. DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 310–11 & n. 6 (2d Cir.

---

1. The 180-day period does not always commence with the filing of the charge. A different time for commencement occurs if state agencies have become involved in the dispute pursuant to 42 U.S.C. § 2000e–5(c), (d) (Supp. III, 1973).

1975); *E. E. O. C. v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1356 (6th Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975).

The basic premise of the majority's holding is that the EEOC's mandatory and unilateral notification requirement is invoked only when the EEOC has decided not to file suit. With the exception that the EEOC must notify the aggrieved party upon the dismissal of the charge, the language of § 706(f)(1) belies the premise that the EEOC is required to issue notification only at the conclusion of the administrative process. The statute does not say that the EEOC must notify the aggrieved party only if the EEOC has *decided* not to file suit within 180 days of filing the charge. The language provides that notification must be given if the EEOC, or the Attorney General as the case may be, *has not actually filed suit within that 180-day period.* In this same regard, the statute provides that notice must ensue upon the failure to enter into a proper conciliation agreement within the 180-day period. Section 706(f)(1) is not concerned with what decisions have yet to be made by the EEOC in the lengthy administrative process. It is concerned only with what has or has not actually occurred during the relevant 180-day period.

It is clear that Congress expressed the hope that the offices of the EEOC and the Attorney General would dispose of many of the charges, either through conciliation or litigation, and that recourse to private litigation would not be the general rule. 118 Cong.Rec. 7168 (1972). In furtherance of this policy Congress in 1972 extended the investigatory and conciliatory period imme-

diately preceding an aggrieved person's right to pursue private litigation remedies. Prior to 1972 the EEOC was entitled to only 30 days (or 60 days in some instances) in which voluntary compliance must be achieved. If conciliation had failed in this short period, the aggrieved party was permitted to institute a private lawsuit upon notification. 42 U.S.C. § 2000e–5(e) (1970). In order to effectuate the additional adjudicatory responsibilities vested in the EEOC and Attorney General by the 1972 amendments, Congress extended this 30-day period to 180 days.[2] Within this six-month period the EEOC was given an exclusive and unmolested right to review the merits of a charge, investigate, conciliate and assess whether court action should be pursued by the EEOC.[3] There seems to be no reason why the EEOC cannot simultaneously conciliate and investigate a charge upon its filing. During this period it was hoped that the charge would be dismissed, a civil action would be filed or conciliation would be successful.

The 180-day period serves its apparent purpose when it limits the time before which a private action may not be filed and thus avoids potential interference with the Commission in the performance of its primary duties of conciliation and enforcement.

*E. E. O. C. v. Cleveland Mills Co.*, 502 F.2d 153, 156 (4th Cir. 1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975).

If none of these § 706(f)(1) contingencies has occurred in the 180-day period, the aggrieved party is entitled to notification from the EEOC. Congress clearly stated

---

**2.** Congress was acutely aware that the short 30-day period was creating a backlog of charges and rendering it difficult for the EEOC to process the charges and to perform its conciliatory functions. H.R.Rep.No.92–238, 92d Cong., 1st Sess. 3–5, 12 (1971); 1972 U.S.Code Cong. & Admin.News 2137, 2139–43 (1972). Extending this period to 180 days would permit the EEOC to more fully investigate and to make a more informed determination as to how to proceed with a charge. Even if a charge could not be fully processed in the six-month period, as many could not, it was hoped that

the aggrieved party would forego his private remedies and place his primary reliance for resolution upon the conciliation and adjudicatory authority of the EEOC. *See E. E. O. C. v. Cleveland Mills Co.*, 502 F.2d 153, 157 (4th Cir. 1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975).

**3.** The EEOC is precluded from commencing litigation during the 30-day period immediately after the charge is filed. 42 U.S.C. § 2000e–5(f) (Supp. III, 1973).

that this § 706(f)(1) notification requirement and the ensuing right of private litigation are:

> designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission or Attorney General does not act with due diligence and speed. Accordingly, the provisions * * * allow the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.

118 Cong.Rec. 7168 (1972). (Emphasis added.)

This language indicates that notification may be required before final agency action; in fact, it may be required when the agency effectively has done nothing ("agency inaction") within 180 days. The EEOC notification permits the aggrieved party to "elect" whether to pursue his private action or seek final resolution through the EEOC.

The aggrieved party is not necessarily foreclosed from judicial resolution of his claim merely because he elects not to pursue his private litigation option. Courts have construed § 706(f)(1) to permit the EEOC to litigate a matter after the expiration of the 180-day period. *Tuft v. McDonnell Douglas Corp., supra* at 1307; *E. E. O. C. v. Kimberly-Clark Corp., supra* at 1356.

> The Conference Committee's allusions to the *"individual's election"* to pursue his or her own remedy [under § 706(f)(1)] if there are long delays in the administrative process and to the necessity "that all avenues be left open for quick and effective relief" support an inference that the Commission's right to sue continues after the individual's right has matured. *The allusions indicate that individual standing to sue is designed to let the individual choose between pursuing his own remedy and relying on the representation of the Commission.*

*E. E. O. C. v. Cleveland Mills Co., supra* at 157. (Emphasis added.)

This interpretation of § 706(f)(1) comports generally with the clear statutory language and the congressional intent. The dramatic increase in charges filed and the internal procedures of the EEOC have made it difficult for the EEOC to expeditiously dispose of the numerous charges. These difficulties may not have been anticipated by Congress. Despite the burden that the above interpretation may impose upon the EEOC, I do not believe that an unambiguous statute should be judicially modified to permit it to fit the exigencies of an administrative agency's failure to expeditiously process complaints.

The judicial interpretations of § 706(f)(1) have been almost unanimously contrary to that of the majority. In *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 310–11 (2d Cir. 1975), the court stated:·

> The statute * * * provides for but one 90-day limitation for the bringing of actions and that is in sub-section (f)(1). There are described therein four sets of circumstances which, if any one of them occurs, mandate a notification by the Commission (or by the Attorney General, as the case may be) to the person aggrieved; and he (or in certain situations others) may bring a civil action on the charge against the respondent * * * "within ninety days after the giving of such notice" by the Commission.

The *DeMatteis* court also indicated that EEOC notification is required even absent a request from the aggrieved person.

> When any of the three sets of circumstances referred to in sub-section (f)(1) of 42 U.S.C. § 2000e–5, other than dismissal under sub-section (b), has occurred after some efforts at conciliation have been made, the Commission has the statutory duty under (f)(1), *on its own initiative*, to inform the aggrieved party of the status of his case in the light of the provisions of that statutory sub-section.

511 F.2d at 310 n. 6. (Emphasis in original.)

In *E. E. O. C. v. Kimberly-Clark Corp., supra* at 1356, the court noted:

> In a later sentence [in § 706(f)(1)] the EEOC is required to notify a charging party when an agreement has not been

reached 180 days after the charge's filing, and the private party is then authorized to sue.

In addition to the three District Court opinions under consideration in the present appeal, federal district courts have consistently construed § 706(f)(1) to reach a result contrary to that reached by the majority here. *Keeling v. St. Louis-San Francisco Ry.*, 10 E.P.D. ¶ 10,567 (W.D.Tenn.1975); *Bottoms v. St. Vincents Hospital, Inc.*, 11 F.E.P. 392 (S.D.Ind.1975); *Bradshaw v. Zoological Society*, 10 F.E.P. 1268 (S.D.Cal. 1975); *Barfield v. A.R.C. Security, Inc.*, 9 E.P.D. ¶ 10,136 (N.D.Ga.1975); *Garner v. E. I. duPont de Nemours & Co.*, Civ. No. 75–526 (D.S.C. June 11, 1975). Many courts have acknowledged the *Tuft* decision and proceeded to disregard its interpretation. *Williams v. Sheraton Corp.*, 11 F.E.P. 897 (E.D.La.1975); *Turner v. Texas Instruments, Inc.*, 401 F.Supp. 1179, 11 F.E.P. 748 (N.D.Tex.1975); *Wilson v. Sharon Steel Corp.*, 399 F.Supp. 403, 11 F.E.P. 145 (W.D. Pa.1975); *Mungen v. Choctaw, Inc.*, 402 F.Supp. 1349, 10 F.E.P. 1345 (W.D.Tenn. 1975); *Kelly v. Southern Products*, Civ. No. 19243 (N.D.Ga. June 14, 1975).[4] The court in *Taylor v. Pacific Intermountain Express Co.*, 394 F.Supp. 72, 9 E.P.D. ¶ 10,170 (N.D. Ill.1975), concluded that the failure of conciliation letter commenced the statutory 90-day period. However, the court held that its decision would not be applied to the plaintiff in that case because of equitable considerations. Two other cases which invalidated the EEOC's two-letter procedure were permitted to have prospective effect only. *Stansell v. Sherwin Williams Co.*, 404 F.Supp. 696, 10 E.P.D. ¶ 10,592 (N.D.Ga. 1975); *Roberts v. H. W. Ivey Construction Co.*, 408 F.Supp. 622, 10 E.P.D. ¶ 10,588 (N.D.Ga.1975). In my opinion, these numerous courts have properly construed § 706(f)(1).

The majority's interpretation imposes inherent hardships upon employers or other individuals charged with violating Title VII. The aggrieved party is vested with sole responsibility, in the absence of EEOC litigation, to determine when private legal action should be instituted during the lengthy course of administrative action. Due to the tremendous backlog of discrimination cases, it is not inconceivable that final EEOC action may not be forthcoming for years after the filing of the charge. The employer, totally unaware as to when, if ever, a private suit will be brought, may be severely disadvantaged when private litigation is pursued since he may encounter difficulty in properly preparing a case and marshalling relevant evidence concerning an incident occurring months or years prior to the suit. The aggrieved party, on the other hand, is in total control of when to file a private suit and may use the passage of time to his advantage.

A further prejudicial aspect is that the aggrieved party may have a pecuniary interest in delaying the private litigation for a lengthy period of time. Since many Title VII cases encompass alleged discriminatory practices in hiring, discharge or promotion, an aggrieved party generally makes a request for a back pay award. The Supreme Court of the United States has recently liberalized the granting of back pay awards in Title VII actions and has implied that a denial of back pay is to be the exception, not the rule.

> Given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280, 298 (1975). (Citation omitted.)

Rather than obligating the aggrieved party either to sue immediately after the expiration of the 180-day period or to forego such right, the majority allows him to

---

4. A limited number of courts have adopted the majority's interpretation. *Williams v. Southern Union Gas Co.*, 529 F.2d 483 (10th Cir. 1976); *Diaz v. Food Fair Stores*, 11 F.E.P. 920 (D.Col.1975); *Craig v. Eastern Airlines*, 10 F.E.P. 1307 (D.Conn.1975).

await final agency action and to permit the back pay award to accumulate to the prejudice of the employer and to the benefit of the aggrieved party.[5] The degree to which the majority permits prejudice is best exemplified by the present *Lacy* case where the aggrieved party delayed filing suit for approximately 420 days after receiving EEOC notification that conciliation efforts had failed. I perceive this to be an impermissible vesting of unrestrained authority in the aggrieved party and it completely circumvents the stringent time limitations embodied in Title VII.

Based upon my conviction that the majority's disposition of *Lacy* and *Harris* causes undue prejudice, I would affirm the District Courts' disposition of them.

While I concur in the majority's disposition of *Whitfield*, I do so for substantially different reasons. When Whitfield received notification from the EEOC that conciliation efforts in his case had failed, the 90-day period commenced. Whitfield's failure to file suit in this period deprived the District Court of jurisdiction in the matter.[6]

I disagree with the majority's rationale in *Whitfield* since it purports to reaffirm the alternate holding in *Tuft* and then proceeds to engraft an exception to it. In part IV of *Tuft*, 517 F.2d at 1310, the court interpreted § 706(f)(1) to require actual notification of right to sue and permitted an aggrieved party to disregard a jurisdictional requisite because of reliance on erroneous EEOC advice.

Initially, that section is totally devoid of any language requiring the EEOC to notify the aggrieved party that he has an *actual right to sue*. That section merely obligates the EEOC to notify the aggrieved party

that his charge has been dismissed, no civil action has been filed or no conciliation agreement has been negotiated. While it may be advisable to explain to the aggrieved party that the notification commences the 90-day period, the statute mandates no such requirement. The *Tuft* principle was extrapolated from cases discussing whether the statutory time period commences upon mailing or whether actual receipt of EEOC notification is required. *E. g., Plunkett v. Roadway Express, Inc.*, 504 F.2d 417, 418 (10th Cir. 1974); *Franks v. Bowman Transportation Co.*, 495 F.2d 398, 404 (5th Cir.), *rev'd on other grounds,* 44 U.S.L.W. 4356 (1976). However, these cases were inapposite to the issue raised here and in *Tuft.* There was no question that the aggrieved party in *Tuft* actually received notification from the EEOC. The question presented was what must be contained in the notification letter. Although I believe that § 706(f)(1) may be construed to require actual receipt of the letter by the aggrieved party apprising him that one of the § 706(f)(1) contingencies has occurred, there is nothing in the statute requiring the notification letter to inform the aggrieved party of his actual right to sue.

*Tuft* also held that an aggrieved party is permitted to sue after the expiration of the 90-day period if he reasonably relied upon the EEOC's erroneous advice. This approach, in my opinion, fails to account for the fundamental distinction between a failure to comply with mere administrative rules and noncompliance with jurisdictional requirements. It is clear that an aggrieved party is not necessarily deprived of his day in court merely because there has been a failure to adhere to a non-jurisdictional administrative rule of the EEOC. *E. E. O. C. v. Kimberly-Clark Corp.*, 511 F.2d 1352,

---

**5.** The only statutory limitation on the awarding of back pay is contained in 42 U.S.C. § 2000e–5(g) (Supp. III, 1973), which provides that back pay will not accrue for a period more than two years prior to filing the charge with the EEOC. Under *Tuft* it may continue in the future with no definite limit, dependent only on the whim of the EEOC and the aggrieved party.

**6.** Based upon this conclusion it would be unnecessary to determine whether the earlier letter apprising Whitfield that his case had been rejected for EEOC litigation triggered the 90-day period. While it apparently did not reflect a complete "dismissal" of the charge by the EEOC, it may have been sufficient EEOC notification that the EEOC "has not filed a civil action" pursuant to § 706(f)(1), thus triggering the 90-day period.

1360–61 (6th Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357, 359–60 (7th Cir. 1968). This general precept does not permit a waiver of jurisdictional requirements merely because the EEOC has misadvised the aggrieved person.

Instituting suit within 90 days of receiving proper § 706(f)(1) notice from the EEOC is a jurisdictional requirement. *DeMatteis v. Eastman Kodak Co., supra* at 309. "The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties." *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 542, 95 L.Ed. 702, 710 (1951). Courts may not waive jurisdictional defects merely because the EEOC, in conferring the proper statutory notification, gave erroneous advice to the aggrieved party or followed an improper procedure. *DeMatteis v. Eastman Kodak Co., supra* at 311; *Cleveland v. Douglas Aircraft Co.*, 509 F.2d 1027, 1030 (9th Cir. 1975). Consequently, the erroneous EEOC advice given to the aggrieved persons in *Tuft* and the present cases regarding their right to sue would not permit the courts to waive a jurisdictional defect. I do not believe that jurisdictional requisites are so flexible that a court is permitted to disregard them merely because of an administrative agency's misinterpretation of a statute and erroneous advice. Such an approach in this case would leave jurisdiction to the discretion and convenience of the EEOC and explicitly sanction "a hodgepodge of ad hoc determinations by the EEOC." *Cleveland v. Douglas Aircraft Co., supra* at 1030.

There is one clearly delineated area in which erroneous administrative agency advice and the equities of a particular case may permit a party to litigate despite noncompliance with jurisdictional prerequisites. If a court concludes that an individual has relied to his detriment on an interpretation of a statute which has subsequently been judicially overruled or substantially redefined, the court may weigh the equities of the situation and allow the new decision to have prospective effect only. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 305 (1971). This principle was invoked by the Second Circuit in *DeMatteis v. Eastman Kodak Co., supra*. In its original decision in *DeMatteis* the court recognized that the 90-day statutory period for private suits commenced with notification that the charge had been dismissed; the EEOC requirement that the aggrieved party must request and receive a right to sue letter before the period commences was not sanctioned by the statute. *DeMatteis v. Eastman Kodak Co., supra*. The court refused to adopt the position that reliance upon the EEOC's erroneous advice should permit the statutory period to commence only upon receipt of the right to sue letter, as urged by the EEOC. This would have effected an administrative modification of the jurisdictional requirements contained in the statute. Upon rehearing of that case the court realized that there had been substantial reliance on the procedure impermissibly adopted by the EEOC and invalidated in the original opinion. *The court therefore ruled that its previous ruling invalidating the EEOC procedure would be applied prospectively only.* *DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir. 1975).

Contrary to the majority's assertion in the present case, *ante*, p. 359, I do not believe that the respective approaches taken or results reached in the *Tuft* and *DeMatteis* cases are even remotely related. If *Tuft* had invalidated the EEOC two-letter procedure as being contrary to the clear statutory language and had concluded that its ruling was to be applied only prospectively, it would have mirrored the approach taken in *DeMatteis* and I would fully subscribe to it and its application to the present cases. However, *Tuft* upheld every aspect of the EEOC procedure; thus, there was no issue of prospectivity or retroactivity. If the alternate holding in *Tuft* is that the EEOC regulations are invalid and the decision is to be applied only prospectively, I view that holding to be wholly inconsistent with the initial holding in that case and to create uncertainty as to the exact interpre-

tation of § 706(f)(1). The majority's disposition of the *Lacy* and *Harris* cases, however, fully dispels any implication that *Tuft* invalidated the EEOC procedures in any respect.

I am compelled to disagree with any reaffirmation of the viability of the alternate holding in *Tuft.* The majority in *Whitfield* has ruled that the *Tuft* holding is to be invoked only when the aggrieved party has not been represented by counsel during certain relevant EEOC processes or otherwise is unable to convince the court that the "equities" favor him. *Ante,* p. 361. This approach, to the extent that it emphasizes the fortuity of legal representation, may induce more inequities than it resolves.

Since I disagree with the *Tuft* decision and am convinced that it has improperly interpreted § 706(f)(1), I cannot concur in its application to the present cases. I would affirm the decisions of the District Courts in *Lacy* and *Harris* and would affirm that in *Whitfield* on the grounds stated herein.